**Nos. 2026-1895, -1897, -1899**

# IN THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

V.O.S. SELECTIONS, INC., PLASTIC SERVICES AND PRODUCTS, LLC, dba Genova Pipe, MICROKITS, LLC, FISHUSA INC., TERRY PRECISION CYCLING LLC,

Plaintiffs-Appellees,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, EXECUTIVE OFFICE OF THE PRESIDENT, UNITED STATES, RODNEY S. SCOTT, Commissioner of U.S. Customs and Border Protection, in his official capacity as Commissioner of the United States Customs and Border Protection, JAMIESON GREER, U.S. Trade Representative, in his official capacity as United States Trade Representative, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, HOWARD LUTNICK, Secretary of Commerce, in his official capacity as Secretary of Commerce, UNITED STATES CUSTOMS AND BORDER PROTECTION,

Defendants-Appellants.

AGS COMPANY AUTOMOTIVE SOLUTIONS, et al.,

Plaintiffs-Appellees,

v.

UNITED STATES CUSTOMS AND BORDER PROTECTION, RODNEY S. SCOTT, Commissioner of U.S. Customs and Border Protection, in his official capacity as Commissioner of U.S. Customs and Border Protection, UNITED STATES,

Defendants-Appellants.

GRANT & BOWMAN, INC.,

Plaintiff-Appellee,

v.

UNITED STATES CUSTOMS AND BORDER PROTECTION, RODNEY S. SCOTT, Commissioner of U.S. Customs and Border Protection, in his official capacity as Commissioner of U.S. Customs and Border Protection, UNITED STATES,

Defendants-Appellants.

On Appeal from the United States Court of International Trade
Nos. 25-66, -246, -249, -251, -252, -253, -254, -255, -256, -257, -260, -262, -263, -264, -266, -267, -268, -269, -270, -271, -274, -275, -276, -277, -278, -281, -285, -286, -288, -290, -292, -293, -294, -295, -296, -297, -301, -302, -304, -305, -306, -308, -310, -311, -316, -326, -329, -331, -333, -347, -348, -351, -387, -437, -448, -451, -463, -473, -479, -498, -499, -501, -502, -503, -505, -520, -525, -526, -529, -530, -540, -559, -563, -569, -575, -579, -593, -689, -694, -696, -704, -710, -712, -713, -724, -737, -739, -740, -779, -789, -799, -820, -832, -836, -842, -849, -852, -854, -855, -856, -857, -859, -867, -879, -881, -885, -896, -900, Judge Eaton

# OPENING BRIEF FOR APPELLANTS

BRETT A. SHUMATE
*Assistant Attorney General*

*Additional counsel inside cover*

BRAD HINSHELWOOD
DANIEL WINIK
SOPHIA SHAMS
DOUGLAS C. DREIER
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7213*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-2000*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.............................................................................iii

STATEMENT OF RELATED CASES .............................................................ix

INTRODUCTION .......................................................................................... 1

STATEMENT OF JURISDICTION ................................................................5

STATEMENT OF THE ISSUE .......................................................................5

STATEMENT OF THE CASE ........................................................................ 6

    A.    Background .....................................................................6

    B.    Refund-Related Judicial Proceedings............................11

SUMMARY OF ARGUMENT ..................................................................... 20

ARGUMENT................................................................................................ 21

Standard of Review..................................................................................... 21

THE CIT EXCEEDED ITS AUTHORITY IN ENTERING THE UNIVERSAL INJUNCTIONS ................................................................ 21

    A.    The CIT Clearly Lacked Authority To Issue Universal Injunctions ...........................................................21

    B.    The CIT's Radical Deviation From The Party-Presentation Principle Further Warrants Vacatur ..............................21

    C.    The CIT Failed To Apply The Equitable Factors For Injunctive Relief ..........................................34

CONCLUSION ........................................................................................... 38

ADDENDUM

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                                 <u>Page(s)</u>

*AGS Co. Auto. Sols. v. CBP*,
813 F. Supp. 3d 1298 (Ct. Int'l Trade 2025)................................................ 11-12

*American Hosp. Ass'n v. Price*,
867 F.3d 160 (D.C. Cir. 2017).....................................................................37

*ARP Materials, Inc. v. United States*,
47 F.4th 1370 (Fed. Cir. 2022).....................................................................8

*Astellas Pharma, Inc. v. Sandoz Inc.*,
117 F.4th 1371 (Fed. Cir. 2024)...................................................................33

*Atmus Filtration, Inc. v. United States*,
2026 WL 616128 (Ct. Int'l Trade Mar. 4, 2026) .......................................12, 13

*Atmus Filtration, Inc. v. United States*,
2026 WL 661636 (Ct. Int'l Trade Mar. 6, 2026) ................................................14

*Atmus Filtration, Inc. v. United States*,
2026 Ct. Intl. Trade LEXIS 92 (Ct. Int'l Trade Mar. 16, 2026).......................14

*Atmus Filtration, Inc. v. United States*,
2026 WL 2199711 (Ct. Int'l Trade Mar. 20, 2026) ...........................................14

*Atmus Filtration, Inc. v. United States*,
2026 WL 2199122 (Ct. Int'l Trade Mar. 27, 2026) ...........................................15

*Atmus Filtration, Inc. v. United States*,
2026 Ct. Intl. Trade LEXIS 103 (Ct. Int'l Trade Apr. 1, 2026) ................. 14-15

*Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists &*
*Aerospace Workers*, 390 U.S. 557 (1968)............................................................26

*Califano v. Yamasaki*,
442 U.S. 682 (1979)......................................................................................22

*Clark v. Sweeney*,
607 U.S. 7 (2025) ................................................................................33

*Department of State v. AIDS Vaccine Advoc. Coal.*,
145 S. Ct. 753 (2025) ........................................................................37

*Euro-Notions Fla., Inc. v. CBP*,
2026 Ct. Intl. Trade LEXIS 104 (Ct. Int'l Trade Apr. 7, 2026) ......................15

*Euro-Notions Fla., Inc. v. CBP*,
2026 WL 2199710 (Ct. Int'l Trade Apr. 7, 2026) ...........................................15

*Euro-Notions Fla., Inc. v. CBP*,
2026 WL 2199123 (Ct. Int'l Trade Apr. 14, 2026) ...........................................17

*Euro-Notions Fla., Inc. v. CBP*,
2026 Ct. Intl. Trade LEXIS 98 (Ct. Int'l Trade Apr. 20, 2026) ......................16

*Fundicao Tupy S.A. v. United States*,
841 F.2d 1101 (Fed. Cir. 1988) ........................................................................18

*Gill v. Whitford*,
585 U.S. 48 (2018) ................................................................................26

*Greenlaw v. United States*,
554 U.S. 237 (2008) ................................................................................33

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) ................................................................................26

*Learning Res., Inc. v. Trump*,
607 U.S. 229 (2026) ................................................................5, 6, 27

*Los Angeles Press Club v. Noem*,
171 F.4th 1179 (9th Cir. 2026) ........................................................................22

*Margolin v. National Ass'n of Immigr. Judges*,
146 S. Ct. 1285 (2026) ................................................................4, 32, 33

*Massachusetts v. Mellon*,
262 U.S. 447 (1923) ................................................................ 25-26

*Murthy v. Missouri*,
603 U.S. 43 (2024) ..............................................................................26

*Oman Fasteners, LLC v. United States*,
125 F.4th 1068 (Fed. Cir. 2025) .........................................................21

*Rhone Poulenc, Inc. v. United States*,
880 F.2d 401 (Fed. Cir. 1989) .............................................................23

*Scott v. City of Daytona Beach*,
__ F.4th __, 2026 WL 1830927 (11th Cir. June 25, 2026) ...............22

*Sioux Honey Ass'n v. Hartford Fire Ins. Co.*,
672 F.3d 1041 (Fed. Cir. 2012) ..........................................................26

*Starbucks Corp. v. McKinney*,
602 U.S. 339 (2024)..............................................................................34

*Talbott v. United States*,
176 F.4th 720 (D.C. Cir. 2026) ...........................................................22

*Tariffs Collected in Reliance on Int'l Emergency Econ.*
*Powers Act (IEEPA), In re*,
2026 WL 2199714 (Ct. Int'l Trade July 20, 2026) ............................19

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)..............................................................................25

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025)................................. 3, 13, 20, 21, 22, 23, 24, 25, 27, 28, 35

*United States v. Sineneng-Smith*,
590 U.S. 371 (2020)..........................................................................32, 33

*United States, In re*,
2026 WL 2188887 (Fed. Cir. June 4, 2026) ............................... 2-3, 18

*United States, In re*,
2026 WL 1662186 (Fed. Cir. June 9, 2026) .......................................18

*V.O.S. Selections, Inc. v. Trump,*
  149 F.4th 1312 (Fed. Cir. 2025).......................................3, 4, 20, 23, 34

*Winter v. NRDC,*
  555 U.S. 7 (2008).......................................................................34

**U.S. Constitution:**

Art. I, § 8, cl. 1 .......................................................................27

Art. I, § 8, cl. 4 .......................................................................27

Art. III, § 2, cl. 1 ....................................................................25

**Statutes:**

19 U.S.C. § 1484........................................................................7

19 U.S.C. § 1484(a)(1)(B)(i) ........................................................7

19 U.S.C. § 1484(b).....................................................................10

19 U.S.C. § 1484(c)......................................................................7

19 U.S.C. § 1500.........................................................................7

19 U.S.C. § 1501.....................................................................8, 31

19 U.S.C. § 1504(a)(1) .................................................................7

19 U.S.C. § 1504(b)......................................................................7

19 U.S.C. § 1505(a)......................................................................7

19 U.S.C. § 1505(b)......................................................................8

19 U.S.C. § 1505(b)-(c).................................................................35

19 U.S.C. § 1514.....................................................................8, 31

19 U.S.C. § 1514(a)......................................................................8

19 U.S.C. § 1514(c)(3) .................................................................8

19 U.S.C. § 1515..................................................................................31

28 U.S.C. § 1292(c)(1) .........................................................................5

28 U.S.C. § 1295(a)(5) .........................................................................5

28 U.S.C. § 1581..................................................................................26

28 U.S.C. § 1581(a) ..............................................................................8

28 U.S.C. § 1581(i)(1)(B) ..................................................................5, 9

28 U.S.C. § 1581(i)(1)(D) .....................................................................9

28 U.S.C. § 1585............................................................................23, 25

**Regulations:**

19 C.F.R. § 159.1 ...................................................................................7

19 C.F.R. § 159.11(a) .............................................................................7

19 C.F.R. § 159.12(a) .............................................................................7

19 C.F.R. § 159.12(d) .............................................................................7

19 C.F.R. § 159.12(e) .............................................................................7

**Rule:**

Fed. R. App. P. 4(a)(1)(B)......................................................................5

**Other Authorities:**

CBP, *Consolidated Administration and Processing of Entries (CAPE) Phase 1* (Apr. 8, 2026), https://perma.cc/3X6U-TY3F ...............................................9

CBP, *Reconciliation*, https://perma.cc/YM8A-AR3H ....................................10

Order, *Atmus Filtration, Inc. v. United States*, No. 26-1259 (Ct. Int'l Trade Apr. 8, 2026), Dkt. 54.........................................15

Order, *BigBadToyStore, Inc. v. United States*,
No. 25-875 (Ct. Int'l Trade July 20, 2026), Dkt. 10.........................................30

Order, *Forever Cheese, LLC v. United States*,
No. 25-825 (Ct. Int'l Trade July 20, 2026), Dkt. 12.........................................30

Order, *Princess Awesome, LLC v. U.S. Customs & Border Prot.*,
No. 25-078 (Ct. Int'l Trade July 15, 2026), Dkt. 25.........................................30

Order, *V.O.S. Selections, Inc. v. United States*,
No. 25-66 (Ct. Int'l Trade July 24, 2026), Dkt. 108.........................................30

## STATEMENT OF RELATED CASES

One of these consolidated appeals arises from a case that was previously before this Court in an appeal concerning the legality of tariffs imposed under the International Emergency Economic Powers Act (IEEPA). That appeal was docketed as *V.O.S. Selections, Inc. v. Trump*, Nos. 2025-1812, 2025-1813, and this Court's en banc decision holding the IEEPA tariffs unlawful was issued on August 29, 2025, and is reported at 149 F.4th 1312. This Court's decision was later affirmed by the Supreme Court. *Learning Res., Inc. v. Trump*, 607 U.S. 229 (2026).

The government also previously petitioned for a writ of mandamus from an order compelling the testimony of the Commissioner of U.S. Customs and Border Protection that was entered in one of these consolidated cases. That mandamus petition was docketed as *In re United States*, No. 2026-144 (Fed. Cir.). After the en banc Court stayed the Court of International Trade's order pending resolution of the mandamus petition, *see In re United States*, 2026 WL 2188887 (Fed. Cir. June 4, 2026) (per curiam), and the Court of International Trade then reconsidered its order, the United States withdrew its mandamus petition. This Court accordingly entered an order dismissing the mandamus petition on June 9, 2026.

The government is not aware of any other related cases within the meaning of Federal Circuit Rule 47.5(b).

## INTRODUCTION

After the invalidation of tariffs that the President had imposed under the International Emergency Economic Powers Act (IEEPA), the government established an orderly process for refunding those tariffs. U.S. Customs & Border Protection (CBP) created a new functionality to facilitate administrative refunds on import entries that have not yet been finally liquidated—*i.e.*, entries for which the administrative refund process remains legally available. CBP has already processed and certified $100 billion in refunds through this system. And CBP has made clear that it will comply with party-specific court orders to refund tariffs on "finally liquidated" entries—*i.e.*, those for which the administrative refund process is no longer available. The Court of International Trade (CIT) has already entered hundreds of such orders in suits brought by importers seeking that relief, and importers who have not yet brought such suits are free to do so within the statute of limitations.

The present dispute arises because the CIT did not stop there. Rather, Judge Eaton of the CIT—to whom the CIT's Chief Judge sua sponte reassigned all of the IEEPA-refund cases—effectively appointed himself overseer of CBP's entire refund effort. Acting sua sponte, he purported to reject an importer's withdrawal of its motion for a temporary restraining order

compelling CBP to refund the IEEPA tariffs it had paid. Without having received briefing, Judge Eaton then entered relief far broader than the importer had sought in the withdrawn motion: a universal injunction, requiring the government to refund the IEEPA tariffs not just to that importer but to *all* importers who paid the IEEPA tariffs, regardless of whether they have availed themselves of the administrative process or brought suits seeking refunds for otherwise finally liquidated entries. After the importer dismissed the case in which Judge Eaton initially entered that universal injunction, he proceeded to reenter the injunction in several additional cases of his own choosing—again acting sua sponte and without either a motion for universal injunctive relief or any briefing from the government on the propriety of such relief. And after staying those injunctions (sua sponte), he has conducted (also sua sponte) a series of off-the-record hearings, behind closed doors, that he has characterized as "settlement conferences" even though no party has asked to pursue settlement. Before each such hearing, he has required updates from CBP on its refund efforts. On one occasion he went so far as to compel testimony from the Senate-confirmed CBP Commissioner, eliciting this Court's intervention, *see In re United States*, 2026 WL 2188887

(Fed. Cir. June 4, 2026) (en banc). It is difficult to overstate how irregular these proceedings have been.

This appeal—which Judge Eaton has recently exhorted the government to withdraw—arises from the CIT's universal injunctions. Hearing Transcript at 36, *V.O.S. Selections, Inc. v. United States*, No. 25-66 (Ct. Int'l Trade June 12, 2026), Dkt. 104. Those injunctions are legally indefensible in at least three respects. First, they plainly violate the Supreme Court's holding in *Trump v. CASA, Inc.*, 606 U.S. 831, 841 (2025), that federal courts lack equitable authority to issue universal injunctions. This Court already made clear that *CASA* applies to the CIT: In its en banc decision on the validity of the IEEPA tariffs, the Court cited *CASA* in vacating the universal injunction the CIT had entered against the collection of the tariffs. *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1339-1340 (Fed. Cir. 2025) (per curiam). Unsurprisingly, in light of that precedent, the CIT offered no plausible basis for distinguishing *CASA*.

Second, the CIT's entry of such extraordinary injunctions on its own motion, and without adversarial briefing, itself warrants vacatur of the injunctions. The principle of party presentation serves an important separation-of-powers function: It ensures that federal courts act only as neutral

arbiters of concrete disputes brought to them by the parties, rather than as "roving commissions, licensed to sally forth each day looking for wrongs to right." *Margolin v. National Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288 (2026) (per curiam) (citation and quotation marks omitted). The CIT's conduct in these cases exemplifies what the principle of party presentation is meant to prohibit.

Finally, the CIT did not even consider the equitable factors for injunctive relief. In its prior opinion in this case, the Court recognized that "[a]n injunction 'does not follow from success on the merits as a matter of course,'" *V.O.S. Selections*, 149 F.4th at 1339, and that courts accordingly cannot grant injunctions without considering the equitable factors. Yet the CIT said not a word about the equitable factors. And had the CIT engaged in the requisite consideration, it could not possibly have concluded that the universal injunctions were necessary to prevent harm to a plaintiff with standing or that the balance of harms and the public interest favored the universal injunctions.

In short, the universal injunctions exemplify the CIT's broader failure to grapple with constitutional and statutory limits on the power of the federal courts. The injunctions cannot possibly be understood to comply with

those limits, particularly given that no party to the litigation requested them and that they are plainly unnecessary to prevent irreparable harm to any party. The CIT entered the injunctions not in an attempt to remedy the concrete disputes before it but in an attempt to superintend the government's entire process of refunding the IEEPA tariffs. That is not a proper judicial function. The universal injunctions should accordingly be vacated.

## STATEMENT OF JURISDICTION

The CIT has jurisdiction over the underlying actions because they are "civil action[s] commenced against the United States, its agencies, or its officers, that arise[] out of" a "law of the United States providing for … tariffs." 28 U.S.C. § 1581(i)(1)(B); *see Learning Res., Inc. v. Trump*, 607 U.S. 229, 240 n.1 (2026). The CIT entered universal injunctions on April 17, 2026. Appx1-9. The government filed timely notices of appeal on June 2, 2026. Appx44-46; Appx48-50; Appx52-54; *see* Fed. R. App. P. 4(a)(1)(B). This Court has jurisdiction under 28 U.S.C. §§ 1292(c)(1) and 1295(a)(5).

## STATEMENT OF THE ISSUE

Whether the injunctions should be vacated because they exceeded the CIT's authority because of their universal scope, because the CIT

disregarded the principle of party presentation, and because the CIT failed to consider the equitable factors for injunctive relief.

## STATEMENT OF THE CASE

These appeals arise from the aftermath of the Supreme Court's decision in *Learning Resources, Inc. v. Trump*, 607 U.S. 229 (2026), in which the Court held that IEEPA does not authorize the President to impose tariffs. Some importers had filed suit in the CIT before that decision, seeking refunds of the IEEPA tariffs, and others filed suit after the decision.

### A.     Background

To understand the refund process, it is helpful to understand how the processing of a particular importer's entries generally works.  An importer seeking to bring goods into the United States, or its designated customs broker, typically must file through the Automated Commercial Environment (ACE) system an entry with detailed information relevant to calculating any duties owed and paying initial estimated duties.  Declaration of Brandon Lord (Lord Decl.) at 2-3, *Atmus Filtration, Inc. v. United States*, No. 26-1259

(Ct. Int'l Trade Mar. 6, 2026), Dkt. 31; 19 U.S.C. §§ 1484, 1505(a).[1]  CBP, the

agency responsible for administering tariffs on imports, must first determine

whether the merchandise may be released from customs custody (*i.e.*,

whether the merchandise is admissible into the United States), 19 U.S.C.

§ 1484(c), and then determine the duty liability, *id.* § 1484(a)(1)(B)(i).

The point at which CBP concludes the process of determining the duty

liability and finalizes the entry is known as "liquidation."  19 C.F.R. § 159.1;

*see* 19 U.S.C. § 1500.  Liquidation ordinarily must be completed within a year

of entry (or else entries are deemed liquidated at the amounts "asserted by

the importer" at the time of entry, 19 U.S.C. § 1504(a)(1); 19 C.F.R.

§ 159.11(a)), but CBP can, in certain circumstances, extend that timeline three

times in one-year increments, such that the entry can remain unliquidated

for a total of four years from the date of entry, 19 U.S.C. § 1504(b); 19 C.F.R.

§ 159.12(a), (d), (e), unless liquidation is suspended by a court order or other

lawful authority.  Ordinarily, liquidation is the point at which CBP refunds

any estimated duties the importer has previously paid that have been

---

[1] The CIT repeatedly relied on filings from various cases other than the ones at hand.  We have not included those filings in the appendix because they are not formally part of the record in these cases, but we can of course provide them in a supplemental appendix if requested.

determined to be improper.  19 U.S.C. § 1505(b).  CBP may issue refunds (known as "administrative refunds") before liquidation, but that is generally a manual and labor-intensive process.  *See* Lord Decl. at 4, *Euro-Notions Fla., Inc. v. United States*, No. 25-595 (Ct. Int'l Trade Apr. 14, 2026), Dkt. 15.

After an entry is liquidated, CBP has the statutory authority to reliqui-date the entry within 90 days of the original liquidation to fix any errors in the liquidation.  Lord Decl. at 2, *Atmus* (Mar. 6, 2026), Dkt. 31; *see* 19 U.S.C. § 1501.  Once liquidation is complete, the importer can file an administrative protest of an adverse CBP determination under 19 U.S.C. § 1514.  Protests generally must be filed "within 180 days after" liquidation.  19 U.S.C. § 1514(c)(3).  Liquidation becomes final if no protest is filed within that timeframe. *Id.* § 1514(a).  If CBP denies a protest, then the importer who filed it can challenge CBP's decision at the CIT under 28 U.S.C. § 1581(a), subject to certain statutory conditions.  Alternatively, an importer can invoke the CIT's "residual jurisdiction under § 1581(i)" if the relief under § 1581(a) is unavailable or "manifestly inadequate" — that is, "'an exercise in futility.'" *ARP Materials, Inc. v. United States*, 47 F.4th 1370, 1379 (Fed. Cir. 2022).  The residual provision gives the CIT exclusive jurisdiction over suits "aris[ing] out of any law of the United States providing for … tariffs, duties, fees, or

other taxes on the importation of merchandise for reasons other than the raising of revenue" or the "administration and enforcement" of such tariffs, duties, fees, or taxes.  28 U.S.C. § 1581(i)(1)(B), (D).

Under the ordinary system, where CBP usually refunds duties at liquidation within a year from the date of entry, it would have been impossible for CBP to refund the IEEPA tariffs quickly.  CBP lacked the technical capability to quickly and efficiently process the volume of refunds at issue and would have been required to process the liquidation of each entry individually.  *See* Lord Decl. at 5-7, *Atmus* (Mar. 6, 2026), Dkt. 31.  CBP therefore developed a new functionality within its ACE system, known as the Consolidated Administration and Processing of Entries (CAPE), to process IEEPA refunds as quickly as possible.  Lord Decl. at 2, *Euro-Notions* (Apr. 14, 2026), Dkt. 15.

Phase 1 of CAPE, which covered "entries that are either unliquidated or up to 80 days past their liquidation date," CBP, *Consolidated Administration and Processing of Entries (CAPE) Phase 1*, at 1 (Apr. 8, 2026), https://perma. cc/3X6U-TY3F, "became available for use by importers and their brokers … on Monday, April 20, 2026."  Lord Decl. at 2, *Euro-Notions* (May 26, 2026), Dkt. 30.  It has been used more than 252,000 times since then, for

submissions covering more than 25 million entries.  Lord Decl. at 2, *Freestyle World, Inc. v. U.S. Customs & Border Prot.*, No. 26-1088 (Ct. Int'l Trade Aug. 4, 2026), Dkt. 24.  "[A]pproximately $128.68 billion in both potential and certified refunds have been accepted for processing in CAPE," of which "approximately $100 billion have been completed using the CAPE Refund component certified by the agency, and sent to the U.S. Department of the Treasury ('Treasury') for disbursement."  *Id.* at 3 (footnote omitted).  Treasury has indicated to CBP that "these CBP certified refunds are being regularly disbursed," and "CBP continues to review and finalize the outstanding potential refunds" through the CAPE system.  *Id.*

On June 29, 2026, CBP "successfully deployed" additional CAPE functionality, which covers entries (either unliquidated or liquidated within the preceding 80 days) that were flagged for reconciliation but for which no reconciliation entry was filed.  Lord Decl. at 3-4, *Euro-Notions* (July 13, 2026), Dkt. 45; Lord Decl. at 7, *Atmus* (Mar. 31, 2026), Dkt. 51.[2]

---

[2] Because importers may not always have the exact information required when submitting an entry, importers may file with CBP entries that contain estimates based on the best available information they have and later provide the corrected information on a type of entry known as "Reconciliation."  *See* 19 U.S.C. § 1484(b); CBP, *Reconciliation*, https://perma.cc/YM8A-AR3H.

### B. Refund-Related Judicial Proceedings

**1.** A week after the Supreme Court decided *Learning Resources*, an importer that is not a party to these appeals—Atmus Filtration, Inc.—brought suit in the CIT and sought a temporary restraining order (TRO) to "suspend liquidation" of its "unliquidated entries" on which IEEPA tariffs had been imposed. Complaint at 2, *Atmus* (Feb. 27, 2026), Dkt. 2; Proposed Order for Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction Limited to Suspension of Liquidation at 1, *Atmus* (Feb. 27, 2026), Dkt. 3.

Judge Eaton, to whom the case was assigned, ordered the government to respond and scheduled a hearing on Atmus's motion. In response, the government explained that Atmus could not establish irreparable harm because the government did not dispute the CIT's "authority to order reliquidation where an IEEPA tariff has been wrongly imposed and the importer of record is not time barred to contest the liquidation," and because a three-judge panel of the CIT had already "concluded that [the CIT] has the authority to order reliquidation of non-time-barred entries of IEEPA tariffs." Opposition to Motion for Temporary Restraining Order and Preliminary Injunction at 5, *Atmus* (Mar. 2, 2026), Dkt. 14 (citing *AGS Co. Auto. Sols. v. CBP*,

813 F. Supp. 3d 1298 (Ct. Int'l Trade 2025) (per curiam)). The government and Atmus then stipulated that the CIT "possesses authority to order reliquidation of entries assessed with duties imposed under the invalidated IEEPA measures, should such relief be warranted." Stipulation Regarding the Court's Authority to Order Reliquidation at 1, *Atmus* (Mar. 3, 2026), Dkt. 16. "[I]n light of" the stipulation, Atmus filed a "[n]otice" that it was "withdraw[ing]" its TRO motion. Notice of Withdrawal of Motion for a Temporary Restraining Order and Preliminary Injunction Limited to Suspension of Liquidation at 1, *Atmus* (Mar. 3, 2026), Dkt. 16-1.

Judge Eaton nonetheless proceeded with the hearing. During the hearing, he orally rejected Atmus's withdrawal of the TRO motion, without offering any explanation or identifying any authority for overriding the plaintiff's own litigation choices. Hearing Transcript at 5, *Atmus* (Mar. 6, 2026), Dkt. 32. Following the hearing, Judge Eaton—declaring that he would be "the only judge who [would] hear cases pertaining to the refund of IEEPA duties"—issued a universal injunction, which Atmus had not even requested in its withdrawn TRO motion. *Atmus Filtration, Inc. v. United States*, 2026 WL 616128, at *1-2 (Ct. Int'l Trade Mar. 4, 2026). The injunction directed CBP to "liquidate … without regard to the IEEPA duties" "any and all

- 12 -

unliquidated entries"—not just of Atmus but of any importer—"that were entered subject to the IEEPA duties" and to "reliquidate[] without regard to IEEPA duties" "[a]ny liquidated entries for which liquidation is not final." *Id.* The order did not address any of the equitable factors for injunctive relief. *Id.*

Without having afforded the government any opportunity to brief the lawfulness or appropriateness of universal relief, the CIT concluded that it was not bound by the Supreme Court's decision in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), which held that the Judiciary Act of 1789 does not permit federal courts to issue universal injunctions. *See Atmus*, 2026 WL 616128, at *1. The court stated that the CIT "was established pursuant to the Customs Courts Act of 1980," "[n]early 200 years after the Judiciary Act of 1789"; that the CIT "was provided with national geographic jurisdiction" and with "exclusive subject matter jurisdiction to hear claims like" Atmus's; that "Congress cited '[c]onsiderations of judicial economy'" and the need for "'uniformity'" when establishing the CIT; and that the CIT's Chief Judge had "indicated that" all "cases pertaining to the refund of IEEPA duties" would be assigned to the same judge. *Id.* For those reasons, the CIT concluded that it was not bound by the Supreme Court's "discussion of 'whether, under the

Judiciary Act of 1789, federal courts have equitable authority to issue universal injunctions.'" *Id.*

2. Two days later, the government filed a declaration from a CBP official explaining that CBP's systems would not permit immediate compliance with the order. Lord Decl. at 5-11, *Atmus* (Mar. 6, 2026), Dkt. 31. CBP explained that it was planning to develop a new ACE functionality (the CAPE system, discussed above) for the purpose of processing IEEPA tariff refunds. *Id.* at 11-12. In response to that declaration and a nonpublic, off-the-record conference held the same day, the CIT "suspended" its order "to the extent that it directs immediate compliance." *Atmus Filtration, Inc. v. United States*, 2026 WL 661636, at *1 (Ct. Int'l Trade Mar. 6, 2026).

The CIT's Chief Judge subsequently assigned all of the IEEPA-refund cases to Judge Eaton, who had handled *Atmus*. Appx3. The CIT then proceeded to hold, sua sponte, a series of off-the-record "settlement conferences," before each of which it requested and received updates from CBP on the development of the refund system. *See, e.g., Atmus Filtration, Inc. v. United States*, 2026 Ct. Intl. Trade LEXIS 92 (Ct. Int'l Trade Mar. 16, 2026); *Atmus Filtration, Inc. v. United States*, 2026 WL 2199711 (Ct. Int'l Trade Mar. 20, 2026); *Atmus Filtration, Inc. v. United States*, 2026 Ct. Intl. Trade LEXIS 103

(Ct. Int'l Trade Apr. 1, 2026). After several such conferences, the court amended its (still suspended) injunction so that, for the first time, it required the government to "reliquidate[] without regard to the IEEPA duties" "[a]ny liquidated entries for which liquidation is *final*." *Atmus Filtration, Inc. v. United States*, 2026 WL 2199122, at *1 (Ct. Int'l Trade Mar. 27, 2026) (emphasis added).

On April 6, 2026, Atmus filed a notice of voluntary dismissal. Notice of Dismissal, *Atmus* (Apr. 6, 2026), Dkt. 53. The CIT entered an order dismissing *Atmus* on April 8. Order, *Atmus* (Apr. 8, 2026), Dkt. 54.

**3.** On the day after Atmus dismissed its case, Judge Eaton chose another case, brought by importer Euro-Notions Florida, Inc., from among the hundreds of refund cases assigned to him. Although Euro-Notions had never filed a motion for any sort of preliminary injunctive relief, the CIT sua sponte issued an order lifting the stay of the litigation, *Euro-Notions Fla., Inc. v. CBP*, 2026 Ct. Intl. Trade LEXIS 104 (Ct. Int'l Trade Apr. 7, 2026), and then entered—again, sua sponte and without notice to the parties, much less briefing—the same universal injunction previously entered in *Atmus*. *Euro-Notions Fla., Inc. v. CBP*, 2026 WL 2199710, at *1-2 (Ct. Int'l Trade Apr. 7,

2026). The CIT again stayed the injunction "to the extent that it requires immediate compliance." *Id.* at *2.

The CIT then continued the series of nonpublic, off-the-record conferences, preceded by requests to CBP for updates on the development of its refund system, that it had commenced in *Atmus*. *Euro-Notions Fla., Inc. v. CBP*, 2026 Ct. Intl. Trade LEXIS 98 (Ct. Int'l Trade Apr. 20, 2026). The court directed representatives of other importers to also participate in these conferences. *See* Appx38-39. To effectuate that objective, the court sua sponte issued orders in three additional cases. One order directed counsel in the three cases to designate representatives to attend the next *Euro-Notions* conference. *See, e.g., id.*; Appx47; Appx51. The other imposed and stayed, in each of those cases, the same universal injunction previously imposed in *Euro-Notions*, and before that in *Atmus*. *See, e.g.*, Appx1-9. In two of the cases—*Grant & Bowman, Inc. v. CBP* and *AGS Co. Automotive Solutions v. CBP*—the plaintiffs did not have a pending motion for any form of injunctive relief. The third case was *V.O.S. Selections*. Shortly after the Supreme Court issued its decision invalidating the IEEPA tariffs in that case, the *V.O.S. Selections* plaintiffs had filed a motion for a permanent injunction that expressly did not "seek to defend the nationwide scope of the injunction" the

CIT had originally entered.  Appx32.  The plaintiffs instead asked the CIT to order CBP to effectuate their own refunds.  Appx32.  The CIT denied that motion, without explanation, shortly after entering the universal injunction it had previously entered in *Atmus* and *Euro-Notions*.  Appx40-41.

In the ensuing weeks, the government complied with the CIT's requests in *Euro-Notions*, with the CIT periodically ordering additional status reports and holding further off-the-record conferences, in which counsel for the *V.O.S. Selections*, *Grant & Bowman*, and *AGS* plaintiffs also participated. *Euro-Notions Fla., Inc. v. CBP*, 2026 WL 2199123, at *1 (Ct. Int'l Trade Apr. 14, 2026).  The government submitted numerous additional declarations describing the status of CBP's processing of the IEEPA refunds and the development of the CAPE system for ensuring the efficient and effective processing of those refunds.  Lord Decl., *Euro-Notions* (Apr. 14, 2026), Dkt. 15; Lord Decl., *Euro-Notions* (Apr. 28, 2026), Dkt. 26; Lord Decl., *Euro-Notions* (May 12, 2026), Dkt. 28; Lord Decl., *Euro-Notions* (May 26, 2026), Dkt. 30; Lord Decl., *Euro-Notions* (June 10, 2026), Dkt. 34; Lord Decl., *Euro-Notions* (July 1, 2026), Dkt. 39; Lord Decl., *Euro-Notions* (Ct. Int'l Trade July 13, 2026), Dkt. 45; Lord Decl., *Freestyle* (Aug. 4, 2026), Dkt. 24.

At one point, the CIT ordered the Senate-confirmed CBP Commissioner to appear at a hearing in New York City, on less than two weeks' notice, "to answer the court's questions." Appx43. The government petitioned this Court for mandamus and a stay pending resolution of the mandamus petition. Sitting en banc, this Court granted a stay, *In re United States*, 2026 WL 2188887 (Fed. Cir. June 4, 2026) (per curiam), and the CIT subsequently withdrew its order for the Commissioner to appear. The government then withdrew its mandamus petition, and this Court accordingly dismissed it. *In re United States*, 2026 WL 1662186 (Fed. Cir. June 9, 2026).

The government filed appeals from the universal injunctions entered in *Euro-Notions*, *V.O.S. Selections*, *AGS*, and *Grant & Bowman*, and this Court consolidated the appeals. Appx44-46; Appx48-50; Appx52-54; Defendants' Notice of Appeal, *Euro-Notions* (June 2, 2026), Dkt. 32. On July 16, Euro-Notions voluntarily dismissed its case in the CIT, Notice of Dismissal, *Euro-Notions* (July 16, 2026), Dkt. 48, automatically dissolving the universal injunction as entered in that case, *see Fundicao Tupy S.A. v. United States*, 841 F.2d 1101, 1103 (Fed. Cir. 1988). The government therefore voluntarily dismissed its appeal from the *Euro-Notions* injunction as moot.

Separately, after consulting with the parties, the CIT has now entered in hundreds of refund cases pending before it the same importer-specific injunction. *In re Tariffs Collected in Reliance on Int'l Emergency Econ. Powers Act (IEEPA)*, 2026 WL 2199714 (Ct. Int'l Trade July 20, 2026).[3] That injunction requires CBP to reliquidate, without regard to IEEPA duties, any and all entries of the particular importer plaintiff that have been liquidated for more than 80 days and on which the plaintiff made estimated deposits pursuant to IEEPA. *Id.* at *2. The government has not appealed those injunctions and, as noted above, the government has indicated that it intends to comply with importer-specific reliquidation orders of this nature. Because of the CIT's entry of those injunctions, the universal injunctions at issue in this appeal have remaining force only as to the refunds of IEEPA tariffs on finally liquidated entries for importers who have not brought suit to seek such refunds.

---

[3] At an August 5, 2026 conference, the CIT stated that it had entered these injunctions in every IEEPA-refund case that had been filed as of August 3. As further discussed below (at 30 n.4), the CIT has not entered the importer-specific injunction in one of the three cases at issue in this appeal because it is considering a class-certification motion in that case.

## SUMMARY OF ARGUMENT

The CIT's universal injunctions are legally indefensible in three ways, each of which independently warrants vacatur of the injunctions.

*First*, the injunctions are squarely foreclosed by the Supreme Court's decision in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). In *CASA*, the Supreme Court made clear that federal courts, like the CIT, lack authority to enter universal injunctions. This Court has already vacated a universal injunction issued by the CIT "based on" *CASA*'s application to the CIT. *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1339-1340 (Fed. Cir. 2025) (en banc) (per curiam). There is no basis for a different result here.

*Second*, the CIT violated the principle of party presentation when it entered relief that no party had requested, failing even to allow the parties to brief the propriety of the relief. That error explains how the CIT could have erred so egregiously in failing to apply *CASA*, and it is an independent basis for vacatur of the injunctions.

*Finally*, the CIT failed to consider the equitable factors for injunctive relief. Had it done so, it could not have justified granting the universal injunctions, both because they were plainly unnecessary to prevent harm (much less irreparable harm) to any plaintiff with standing in these cases

and because they would harm the government and thus the public interest. In any event, the CIT's complete failure to provide the required analysis is yet another independent basis to vacate the universal injunctions.

## ARGUMENT

### Standard of Review

This Court reviews the CIT's "grant of an injunction for abuse of discretion," which "may be established by showing that the [CIT] made a clear error of judgment in weighing the relevant factors or exercised its discretion based on an error of law or clearly erroneous fact findings." *Oman Fasteners, LLC v. United States*, 125 F.4th 1068, 1084 (Fed. Cir. 2025) (quotation marks omitted). The CIT's determinations "on questions of law" are reviewed "without deference." *Id.* (quotation marks omitted).

### THE CIT EXCEEDED ITS AUTHORITY IN ENTERING THE UNIVERSAL INJUNCTIONS

#### A. The CIT Clearly Lacked Authority To Issue Universal Injunctions

1. In *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), the Supreme Court explained that a "universal injunction can be justified only as an exercise of equitable authority, yet Congress has granted federal courts no such power." *Id.* at 841. The Court reached that conclusion by examining the Judiciary Act

of 1789, which "authorizes the federal courts to issue equitable remedies," and the relevant history. *Id.* (quotation marks omitted). The Court concluded that "the universal injunction lacks a historical pedigree" and thus "falls outside the bounds of a federal court's equitable authority under the Judiciary Act." *Id.* at 847.

Instead, the Court recognized that "a court of equity may fashion a remedy that awards complete relief" to the parties before it. *CASA*, 606 U.S. at 851-852; *see also Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs."). "While party-specific injunctions sometimes 'advantage nonparties,'" the Court explained, "they do so only incidentally." *CASA*, 606 U.S. at 851-852 (alteration omitted).

In light of *CASA*, courts of appeals have vacated universal injunctions to the extent they afford relief to nonparties on the basis that such injunctions exceed the judiciary's equitable authority. *See, e.g.*, *Scott v. City of Daytona Beach*, __ F.4th __, 2026 WL 1830927, at *18 (11th Cir. June 25, 2026); *Talbott v. United States*, 176 F.4th 720, 750 (D.C. Cir. 2026); *Los Angeles Press Club v. Noem*, 171 F.4th 1179, 1191-1192 (9th Cir. 2026).

The Supreme Court's reasoning in *CASA* plainly applies to the CIT. The statute creating the CIT grants that court "all the powers in law and equity of, or as conferred by statute upon, a district court of the United States." 28 U.S.C. § 1585; *see Rhone Poulenc, Inc. v. United States*, 880 F.2d 401, 402 (Fed. Cir. 1989) (discussing § 1585). The CIT's equitable authority is thus coextensive with, and subject to the same limits, as the equitable authority of federal district courts. This Court recognized as much just last year when it vacated the CIT's issuance of a universal injunction "based on the Supreme Court's … decision" in *CASA*. *V.O.S. Selections, Inv. v. Trump*, 149 F.4th 1312, 1339-1340 (Fed. Cir. 2025) (en banc) (per curiam).

The CIT's universal injunctions, requiring the government to refund IEEPA duties for all importers (including non-party importers), cannot possibly be squared with *CASA*. The CIT entered its injunctions in several cases brought by particular importers who asserted that they had paid unlawful duties. The CIT's remedial power in those cases accordingly extended no further than ensuring that those plaintiffs received "complete relief" with respect to their entries. *CASA*, 606 U.S. at 851. Yet the CIT expressly extended its injunctions to require liquidation or reliquidation of "any" and "all" entries in the various categories it identified, regardless of whether

duties on those entries inflicted any injury on the plaintiffs in those cases. Appx3; *see* Appx2 (observing that "Plaintiffs' entries are among the millions of entries that were entered subject to IEEPA duties").  An order to liquidate or reliquidate entries that are not connected to plaintiffs themselves "would not render [plaintiffs] relief any more complete."  *CASA*, 606 U.S. at 853. That is apparent, for example, in light of the fact that the three plaintiffs in *V.O.S. Selections* who paid any IEEPA duties at all had already been reimbursed for 98.5% of their payments by early June of this year.  Declaration of Executive Assistant Commissioner Susan S. Thomas at 8, *V.O.S. Selections, Inc. v. Trump*, No. 25-66 (Ct. Int'l Trade June 4, 2026), Dkt. 98-1.

**2.**     The CIT offered a variety of theories in attempting to distinguish this case from *CASA*, but none succeeds.

The CIT first suggested that *CASA* does not apply because *CASA* addresses the power conferred by the Judiciary Act of 1789, while the CIT "was established pursuant to the Customs Courts Act of 1980," "[n]early 200 years" later.  Appx2.  But it would be absurd to conclude that *CASA*'s holding regarding the equitable authority of federal courts is limited to those courts established by the Judiciary Act of 1789.  Otherwise, for example, a federal district court in Georgia would lack authority to issue universal

relief, but a federal district court in Texas, established through separate legislation after 1789, would possess such authority. That would conflict with *CASA*'s determination that federal district courts lack equitable authority to issue universal injunctions, as the Judiciary Act of 1789 "still today … is what authorizes the federal courts to issue equitable remedies." *CASA*, 606 U.S. at 841 (quotation marks omitted). And as explained, the CIT's organic statute, 28 U.S.C. § 1585, in which Congress vested the CIT with equitable powers coextensive with those of federal district courts, establishes that the CIT does not possess a superpower that (as *CASA* explains) district courts lack.

Any notion that § 1585 vests the CIT with the power to issue universal injunctions would also raise serious constitutional concerns. Article III does not empower federal courts to "exercise general legal oversight of the Legislative and Executive Branches." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423-424 (2021). It authorizes them only to exercise "judicial Power" over "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. To reach beyond the litigants and enjoin the Executive Branch's actions toward third parties "would be not to decide a judicial controversy, but to assume a position of authority over the governmental acts of another and coequal department, an authority which plainly [Article III courts] do not possess." *Massachusetts v.*

*Mellon*, 262 U.S. 447, 489 (1923). It would also contravene Article III standing precedents, which require that plaintiffs establish standing "for each form of relief that they seek," *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (quotation marks omitted), and that a plaintiff's remedy be "limited to the inadequacy that produced [his] injury in fact," *Gill v. Whitford*, 585 U.S. 48, 66 (2018) (quotation marks omitted). Because of these serious concerns, and because § 1585 can easily be read (indeed, it can only plausibly be read) to limit the CIT's remedial powers to those of district courts, reading § 1585 to authorize universal injunctions would violate the canon of constitutional avoidance. *See, e.g.*, *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018).

That the CIT has "national geographic jurisdiction" over tariff-related matters does not change the analysis. *See* Appx2 (citing 28 U.S.C. § 1581). Jurisdiction and the appropriate scope of relief are distinct issues. *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 561 (1968) ("The nature of the relief available after jurisdiction attaches is, of course, different from the question whether there is jurisdiction to adjudicate the controversy."); *see also Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1052 (Fed. Cir. 2012) (likewise distinguishing between jurisdiction and remedial power). There is no basis for the CIT's conclusion that

by vesting the CIT with exclusive nationwide jurisdiction over particular cases, Congress also silently granted the CIT broader equitable powers than any other Article III court.

Nor does the constitutional requirement that "all Duties, Imposts and Excises shall be uniform throughout the United States," U.S. Const. art. I, § 8, cl. 1, provide the CIT authority to award universal relief. That requirement, which is located in Article I of the Constitution, operates as a constraint on Congress's imposition of tariffs in the first instance. *Learning Res., Inc. v. Trump*, 607 U.S. 229, 240 (2026) ("Article I, Section 8, of the Constitution sets forth the powers of the Legislative Branch."). It does not concern—much less expand—the remedial power of the federal courts, under which "[c]omplete relief … is the maximum a court can provide." *CASA*, 606 U.S. at 854. For instance, it cannot be the case that the need for uniformity would make it unconstitutional to dismiss an IEEPA-refund case as time-barred if it were filed outside the statute of limitations, or would limit a court's power to dismiss even a timely filed suit for failure to prosecute. Nor do the similar uniformity requirements for rules of naturalization and bankruptcy, U.S. Const. art. I, § 8, cl. 4, expand the remedial powers of courts addressing immigration or bankruptcy cases.

- 27 -

The CIT's remaining rationales sound in various policy concerns. As the Supreme Court explained in *CASA*, such policy considerations "are beside the point" in determining the scope of a court's equitable power. 606 U.S. at 856. The CIT's observations that all "cases pertaining to the refund of IEEPA duties" have been assigned to a single CIT judge, Appx3, and that Congress generally sought to centralize review of trade matters in a single specialized court, Appx2, have no bearing on the scope of the equitable power the CIT wields in any particular case. By the same token, the CIT's assertion that "[a]ll importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the *Learning Resources* decision," Appx2, directly contradicts *CASA*, which explained that the relevant "question is not whether an injunction offers complete relief to *everyone* potentially affected by an allegedly unlawful act; it is whether an injunction will offer complete relief *to the plaintiffs before the court*," 606 U.S. at 852; *see id.* at 854-855 (rejecting "policy" argument "that universal injunctions are an appropriate remedy to preserve equal treatment among individuals when the Executive Branch adopts a facially unlawful policy").

The CIT's policy concerns are in any event overblown. CBP has undertaken unprecedented efforts to provide an administrative process for

refunds of IEEPA tariffs. As of July 31, "refunds (duties plus interest) of approximately $100 billion have been completed using the CAPE Refund component certified by the agency, and sent to the U.S. Department of Treasury ... for disbursement." Lord Decl. at 3, *Freestyle World, Inc. v. U.S. Customs & Border Prot.*, No. 26-1088 (Ct. Int'l Trade Aug. 4, 2026), Dkt. 24 (footnote omitted). 17.69 million entries have been liquidated or reliquidated without IEEPA duties. *Id.* at 2-3.

Moreover, thousands of suits have been filed challenging the IEEPA tariffs, and those cases provide a vehicle for parties unable to obtain full relief through CBP's administrative refund process to obtain court orders, if necessary, to ensure reliquidation of entries and a refund. In fact, during the pendency of this appeal, the CIT has entered orders in hundreds of cases for CBP to reliquidate, without IEEPA duties, any finally liquidated import entries of the particular importer plaintiffs in those cases. Those orders were entered in two of the three cases on appeal here—*Grant & Bowman* and *AGS*—as well as hundreds of other cases where importer plaintiffs have

sought refunds of IEEPA tariffs.[4] *See, e.g.*, Order, *Forever Cheese, LLC v. United States*, No. 25-825 (Ct. Int'l Trade July 20, 2026), Dkt. 12; Order, *BigBadToyStore, Inc. v. United States*, No. 25-875 (Ct. Int'l Trade July 20, 2026), Dkt. 10; Order, *Princess Awesome, LLC v. U.S. Customs & Border Prot.*, No. 25-078 (Ct. Int'l Trade July 15, 2026), Dkt. 25.

After issuing the universal injunctions, the CIT has expressed concern that, despite these efforts, some IEEPA tariffs might go unrefunded. But those concerns are legally irrelevant, unfounded, or both. The CIT has mentioned tariffs paid by "small importers" who may not have the "capacity or willingness" to take advantage of the CAPE system, Hearing Transcript at 13-14, *V.O.S. Selections, Inc. v. United States*, No. 25-66 (Ct. Int'l Trade June 12, 2026), Dkt. 104, but CBP has explained that it is "processing claims for small importers," and that many of the importers who have submitted CAPE claims "fall into the small importer category," *id.* at 24. The CIT has separately asserted that the government "has not chosen to re-liquidate" certain

---

[4] In the third case, one of the five *V.O.S. Selections* plaintiffs has moved for class certification, and the CIT apparently intends to resolve that motion before entering any importer-specific injunction. *See* Order, *V.O.S. Selections* (July 24, 2026), Dkt. 108. To be clear, the government does not contest the entry of an importer-specific injunction in *V.O.S. Selections*, on the same terms as in *Grant & Bowman*, *AGS*, and other cases.

liquidated entries that have become final. *Id.* at 13-14; *see supra* pp. 7-9 (explaining liquidation process). But as CBP has explained, Congress has provided CBP with limited authority to reliquidate entries: either within 90 days of when an entry was first liquidated (19 U.S.C. § 1501), or if a protest is properly filed and approved by CBP (19 U.S.C. §§ 1514, 1515). The agency has no statutory authority to reliquidate finally liquidated entries on its own accord. Hearing Transcript at 49, *V.O.S. Selections* (June 12, 2026), Dkt. 104.

To the extent that some entries ultimately may not be reliquidated or otherwise refunded, that is a product of choices made by importers about whether to pursue administrative or legal remedies and of the limitations of the statutory scheme Congress has established for reliquidation. And *CASA* makes clear that the CIT's view that those factors result in some unfairness or inconsistency as to non-parties cannot justify exceeding well-settled limits on a court's equity powers. The injunctions here—which by their terms extend far beyond granting relief to the plaintiffs in these cases—cannot be reconciled with those limitations.

**B.  The CIT's Radical Deviation From The Party-Presenta-
tion Principle Further Warrants Vacatur**

The CIT's egregious violation of the principles articulated in *CASA* likely reflected the fact that it never even afforded the government an opportunity to brief the propriety of a universal injunction—or indeed the propriety of any injunction.  As noted above, none of the plaintiffs had a pending motion for a universal injunction, only one set of plaintiffs (in *V.O.S. Selections*) had a pending motion for an injunction of any kind, and those plaintiffs emphasized that they were *not* seeking a universal injunction.  *See* Appx32 ("Plaintiffs no longer seek to defend the nationwide scope of the injunction.").

The CIT thus disregarded the party-presentation principle, which rests on the understanding that parties generally "know what is best for them, and are responsible for advancing the facts and argument entitling them to relief," *United States v. Sineneng-Smith*, 590 U.S. 371, 375-376 (2020) (quotation marks omitted).  The party-presentation principle recognizes that courts "are essentially passive instruments of government," which "rely on the parties to 'frame the issues for decision' and decide only the questions presented." *Margolin v. National Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288 (2026) (per

curiam) (quotation marks omitted).  They "are not roving commissions, li-

censed to sally forth each day looking for wrongs to right."  *Id.* at 1288-1289

(citation and quotation marks omitted).

The CIT's violation of the party-presentation principle provides an ad-

ditional basis for vacatur here.  This Court has recognized that a court abuses

its discretion when it "disregard[s] the longstanding principle of party

presentation" by "rendering its decision on a ground not raised by any party

at any stage of the proceedings."  *Astellas Pharma, Inc. v. Sandoz Inc.*, 117 F.4th

1371, 1377 (Fed. Cir. 2024).  And the Supreme Court has done the same, re-

peatedly reversing courts of appeals for failing to adhere to party-presenta-

tion principles.  *See, e.g.*, *Margolin*, 146 S. Ct. at 1288-1289 (summary reversal);

*Clark v. Sweeney*, 607 U.S. 7, 8-10 (2025) (summary reversal); *Sineneng-Smith*,

590 U.S. at 380; *Greenlaw v. United States*, 554 U.S. 237, 243-244 (2008).  Here,

as in those cases, the CIT "drasti[cally] depart[ed] from the principle of party

presentation" by "transform[ing]" the plaintiffs' arguments and by doing

"so without giving either side a chance to address its theory," *Margolin*, 146

S. Ct. at 1288-1289 (quotation marks omitted).  If the party-presentation prin-

ciple means anything, it means that a court cannot issue the drastic and ex-

traordinary remedy of a universal injunction without a motion before the

court, without any party asking for such radical relief, and without adversarial briefing on the key legal and factual issues.

### C. The CIT Failed To Apply The Equitable Factors For Injunctive Relief

The CIT also erred in its disregard of the equitable factors for injunctive relief. As this Court explained in *V.O.S. Selections*, "[a]n injunction 'does not follow from success on the merits as a matter of course.'" 149 F.4th at 1339 (quoting *Winter v. NRDC*, 555 U.S. 7, 32 (2008)). "A plaintiff seeking a preliminary injunction must establish" not just "that he is likely to succeed on the merits" but "that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20; *see Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024). Yet the CIT here failed even to consider any of the equitable factors. That failure warrants vacatur of the injunction—particularly because, had the CIT considered the equitable factors, it could not properly have concluded that an injunction was warranted.

1. First, the injunctions the CIT entered were unnecessary to prevent injury (much less irreparable injury) to the plaintiffs who established standing in this litigation. At the time the CIT entered the injunctions—on

April 17—the government was on the verge of launching the CAPE system for refunding IEEPA tariffs paid on entries that had not yet been finally liquidated. *See* Lord Decl. at 2, *Euro-Notions Fla., Inc. v. United States*, No. 25-595 (Ct. Int'l Trade Apr. 14, 2026), Dkt. 15; *see also* Lord Decl. at 2, *Euro-Notions* (Apr. 28, 2026) (confirming April 20 launch of CAPE). And as to finally liquidated entries, the government had made clear, as noted above, that it did "not dispute the [CIT]'s authority to order reliquidation" to remove IEEPA tariffs. Stipulation Regarding the Court's Authority to Order Reliquidation at 1, *Atmus* (Mar. 3, 2026), Dkt. 16. There was thus no doubt, at the time the CIT issued the universal injunctions, that plaintiffs here would obtain—even without the injunctions—full refunds of the IEEPA tariffs they had paid, with interest, *see* 19 U.S.C. § 1505(b)-(c). So there was no basis to conclude that an injunction was necessary to prevent harm, much less irreparable harm, to any of them. And to the extent the CIT's rationale was that an injunction was necessary to prevent harm to importers other than the plaintiffs in this litigation, that is not a proper basis for equitable relief for the reasons discussed above. Refunds to nonparties would not "render [plaintiffs'] relief any more complete," *CASA*, 606 U.S. at 853.

The absence of any need for equitable relief has now been borne out. For example, the three plaintiffs in *V.O.S. Selections* who paid IEEPA tariffs have received more than 98% of their refunds. Declaration of Executive Assistant Commissioner Susan S. Thomas (Thomas Decl.) at 8, *V.O.S. Selections* (June 4, 2026), Dkt. 98-1. But this is not a matter of changed circumstances obviating the need for an injunction that was necessary at the time it was issued. Here, it was clear even as the CIT entered these injunctions that they were unnecessary to prevent harm to the plaintiffs who established standing in these cases.

**2.** The balance-of-equities and public-interest factors also weigh strongly against the CIT's injunctions, because if the CIT were to lift the stay it has so far maintained on the government's obligation to comply with the injunctions, it would harm the government in multiple respects.

*First*, it is simply not possible for the government to issue refunds immediately to every importer who paid IEEPA tariffs — regardless of whether the importer has actually requested a refund and regardless of the stage that the importer's entries have reached. CBP has made the processing of IEEPA refunds a top priority, *see, e.g.*, Lord Decl. at 2, *Atmus* (Mar. 31, 2026), Dkt. 51 (explaining the work CBP was undertaking to develop the CAPE system to

process IEEPA refunds), and as of July 31 has processed IEEPA refunds for 17.69 million entries, Lord Decl. at 3, *Freestyle* (Aug. 4, 2026), Dkt. 24, by far surpassing the total number of entries refunded in all of 2025 (338,000), Thomas Decl. at 5, *V.O.S. Selections* (June 4, 2026), Dkt. 98-1.  But despite the herculean nature of its efforts thus far, CBP cannot simply snap its fingers and finish the rest of the refund process overnight.  "[A] court may not require an agency to render performance that is impossible."  *American Hosp. Ass'n v. Price*, 867 F.3d 160, 167 (D.C. Cir. 2017); *see also, e.g.*, *Department of State v. AIDS Vaccine Advoc. Coal.*, 145 S. Ct. 753, 753 (2025) (directing "due regard for the feasibility of any compliance timelines" the district court orders).

*Second*, even an *effort* to comply with the CIT's injunction would harm CBP and the public.  As CBP explained at the time, the CIT's order would require CBP to "divert all [CBP Import Specialists] and [CBP Entry Specialists] to processing IEEPA duty refunds on a full-time basis with no time off."  Lord Decl. at 10, *Atmus* (Mar. 6, 2026), Dkt. 31.  That would "severely disrupt[]" CBP's other functions and responsibilities, preventing CBP from "continu[ing] to adequately perform its mission, including its revenue protection mandate and its vital national security functions."  *Id.* at 10-11.  The

balance-of-equities and public-interest factors thus weigh strongly against the CIT's universal injunctions.

## CONCLUSION

The universal injunctions entered by the CIT should be vacated.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

BRAD HINSHELWOOD
DANIEL WINIK

 */s/ Sophia Shams*
SOPHIA SHAMS
DOUGLAS C. DREIER
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7213*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-2000*
  *sophia.shams@usdoj.gov*

AUGUST 2026

- 38 -



**ADDENDUM**

# TABLE OF CONTENTS

28 U.S.C. § 1585 ..................................................................................... A1

**28 U.S.C. § 1585**

**§ 1585. Powers in law and equity**

The Court of International Trade shall possess all the powers in law and equity of, or as conferred by statute upon, a district court of the United States.

UNITED STATES COURT OF INTERNATIONAL TRADE

```
                                          :
V.O.S. SELECTIONS, INC.; PLASTIC          :
SERVICES AND PRODUCTS, LLC d/b/a          :
GENOVA PIPE; MICROKITS, LLC;              :
FISHUSA INC.; and TERRY PRECISION         :
CYCLING LLC;                              :
                                          :
           Plaintiffs,                    :
                                          :       Before: Richard K. Eaton, Judge
        v.                                :
                                          :       Court No. 25-00066
THE UNITED STATES OF AMERICA;             :
UNITED STATES CUSTOMS AND                 :
BORDER PROTECTION; PETE R.                :
FLORES, in his official capacity as       :
Acting Commissioner for United States     :
Customs and Border Protection;            :
JAMIESON GREER, in his official           :
capacity as United States Trade           :
Representative; OFFICE OF THE UNITED      :
STATES TRADE REPRESENTATIVE;              :
and HOWARD LUTNICK, in his official       :
capacity as Secretary of Commerce;        :
                                          :
           Defendants.                    :
                                          :
```

**ORDER**

Plaintiffs V.O.S. Selections, Inc.; Plastic Services and Products, LLC d/b/a Genova Pope; Microkits, LLC; FishUSA Inc.; and Terry Precision Cycling LLC ("Plaintiffs") are the importers of record of entries that entered the United States subject to duties imposed by various Executive Orders pursuant to the International Emergency Economic Powers Act ("IEEPA"). Plaintiffs commenced this lawsuit seeking, inter alia, injunctive and monetary relief, including "damages in the amount of any tariffs collected by Defendants pursuant to the challenged orders." Compl. at 24, ECF No. 2.

**- Appx1 -**

Court No. 25-00066                                                                                      Page 2

Plaintiffs' entries are among the millions of entries that were entered subject to IEEPA duties, which the Supreme Court ruled unlawful in *Learning Resources, Inc. v. Trump*, 2026 WL 477534 (U.S. Feb. 20, 2026). All importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the *Learning Resources* decision.

In *Trump v. CASA, Inc.*, the Supreme Court held "that universal injunctions are impermissible." 606 U.S. 831, 865 (2025). That holding, however, does not apply to the orders that will be issued in this case. The Court's discussion of "whether, under the Judiciary Act of 1789, federal courts have equitable authority to issue universal injunctions" does not constitute a legal direction to this Court. *Id.* at 839. Nearly 200 years after the Judiciary Act of 1789, the United States Court of International Trade was established pursuant to the Customs Courts Act of 1980, Pub. L. No. 96-417, 94 Stat. 1727 (codified as amended in scattered sections of 28 U.S.C.). To that end the Court was provided with national geographic jurisdiction. *See* 28 U.S.C. § 1581.

The Court was also given exclusive subject matter jurisdiction to hear claims like those presented in this case. This exclusive jurisdiction was recently acknowledged by the Supreme Court. *See Learning Res., Inc.*, 2026 WL 477534, at *6 n.1 ("We agree with the Federal Circuit that the *V.O.S. Selections* case falls within the exclusive jurisdiction of the [United States Court of International Trade]."). That is, the parties to a case in no other court will be bound by this order. Moreover, when establishing this Court, Congress cited "[c]onsiderations of judicial economy, and the need to increase the availability of judicial review in the field of international trade in a manner which results in uniformity without sacrificing the expeditious resolution of import-related disputes." 126 CONG. REC. S13344 (daily ed. Sept. 24, 1980) (statement of Sen. Dennis DeConcini). The Constitution requires this uniformity. U.S. CONST. art. I § 8, cl. 1 (providing that "all Duties, Imposts and Excises shall be uniform throughout the United States").

- Appx2 -

Finally, the Chief Judge has indicated that I am the only judge who will hear cases pertaining to the refund of IEEPA duties. So there is no danger that another Judge, even one in this Court, will reach any contrary conclusions. To find otherwise would be to thwart the efficient administration of justice and to deny those importers who have filed suit the efficient resolution of their claims, and to deny entirely importers who have not filed suit the benefit of the *Learning Resources* decision.

Accordingly, it is hereby

**ORDERED** that, with respect to any and all unliquidated entries that were entered subject to IEEPA duties, U.S. Customs and Border Protection is hereby directed to liquidate those entries without regard to the IEEPA duties. Any liquidated entries for which liquidation is not final shall be reliquidated without regard to those duties. Any liquidated entries for which liquidation is final shall be reliquidated without regard to the IEEPA duties. For the avoidance of doubt, nothing in this order addresses issues concerning duty free de minimis treatment under 19 U.S.C. § 1321 that are otherwise before this Court. *See Axle of Dearborn, Inc. v. Department of Commerce et al.* (1:25-cv-00091-3JP); and it is further

**ORDERED** that this order is suspended to the extent that it requires immediate compliance.

_/s/ Richard K. Eaton_
Judge

Dated: April 17, 2026
      New York, New York

**- Appx3 -**

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AGS COMPANY AUTOMOTIVE SOLUTIONS, | : |
| | : |
| Plaintiff, | : |
| | : Before: Richard K. Eaton, Judge |
| Turn5, Inc., et. al., | : |
| | : Consol. Court No. 25-00255 |
| Consolidated Plaintiffs, | : |
| | : |
| v. | : |
| | : |
| U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA, | : |
| | : |
| Defendants. | : |

**ORDER**

In this consolidated action, the lead Plaintiff, AGS Company Automotive Solutions ("Plaintiff"), is an importer of record of entries that entered the United States subject to duties imposed by various Executive Orders pursuant to the International Emergency Economic Powers Act ("IEEPA"). Plaintiff commenced this lawsuit seeking, inter alia, injunctive and monetary relief, including a "refund to Plaintiff [of] the IEEPA duties collected on those entries, with interest as provided by law." Compl. at 16, ECF No. 3.

Plaintiff's entries are among the millions of entries that were entered subject to IEEPA duties, which the Supreme Court ruled unlawful in *Learning Resources, Inc. v. Trump*, 2026 WL 477534 (U.S. Feb. 20, 2026). All importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the *Learning Resources* decision.

**- Appx4 -**

In *Trump v. CASA, Inc.*, the Supreme Court held "that universal injunctions are impermissible." 606 U.S. 831, 865 (2025). That holding, however, does not apply to the orders that will be issued in this case. The Court's discussion of "whether, under the Judiciary Act of 1789, federal courts have equitable authority to issue universal injunctions" does not constitute a legal direction to this Court. *Id.* at 839. Nearly 200 years after the Judiciary Act of 1789, the United States Court of International Trade was established pursuant to the Customs Courts Act of 1980, Pub. L. No. 96-417, 94 Stat. 1727 (codified as amended in scattered sections of 28 U.S.C.). To that end the Court was provided with national geographic jurisdiction. *See* 28 U.S.C. § 1581.

The Court was also given exclusive subject matter jurisdiction to hear claims like those presented in this case. This exclusive jurisdiction was recently acknowledged by the Supreme Court. *See Learning Res., Inc.*, 2026 WL 477534, at *6 n.1 ("We agree with the Federal Circuit that the *V.O.S. Selections* case falls within the exclusive jurisdiction of the [United States Court of International Trade]."). That is, the parties to a case in no other court will be bound by this order. Moreover, when establishing this Court, Congress cited "[c]onsiderations of judicial economy, and the need to increase the availability of judicial review in the field of international trade in a manner which results in uniformity without sacrificing the expeditious resolution of import-related disputes." 126 CONG. REC. S13344 (daily ed. Sept. 24, 1980) (statement of Sen. Dennis DeConcini). The Constitution requires this uniformity. U.S. CONST. art. I § 8, cl. 1 (providing that "all Duties, Imposts and Excises shall be uniform throughout the United States").

Finally, the Chief Judge has indicated that I am the only judge who will hear cases pertaining to the refund of IEEPA duties. So there is no danger that another Judge, even one in this Court, will reach any contrary conclusions. To find otherwise would be to thwart the efficient administration of justice and to deny those importers who have filed suit the efficient resolution of

their claims, and to deny entirely importers who have not filed suit the benefit of the *Learning Resources* decision.

Accordingly, it is hereby

**ORDERED** that, with respect to any and all unliquidated entries that were entered subject to IEEPA duties, U.S. Customs and Border Protection is hereby directed to liquidate those entries without regard to the IEEPA duties. Any liquidated entries for which liquidation is not final shall be reliquidated without regard to those duties. Any liquidated entries for which liquidation is final shall be reliquidated without regard to the IEEPA duties. For the avoidance of doubt, nothing in this order addresses issues concerning duty free de minimis treatment under 19 U.S.C. § 1321 that are otherwise before this Court. *See Axle of Dearborn, Inc. v. Department of Commerce et al.* (1:25-cv-00091-3JP); and it is further

**ORDERED** that this order is suspended to the extent that it requires immediate compliance.

/s/ Richard K. Eaton
Judge

Dated: April 17, 2026
    New York, New York

**- Appx6 -**

UNITED STATES COURT OF INTERNATIONAL TRADE

|  | : |  |
|---|---|---|
| GRANT & BOWMAN, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | Before: Richard K. Eaton, Judge |
| v. | : | |
| | : | Court No. 25-00689 |
| U.S. CUSTOMS AND BORDER | : | |
| PROTECTION; RODNEY S. SCOTT, in | : | |
| his official capacity as Commissioner of | : | |
| U.S. Customs and Border Protection; | : | |
| and the UNITED STATES, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**ORDER**

Plaintiff Grant & Bowman, Inc. ("Plaintiff") is the importer of record of entries that entered the United States subject to duties imposed by various Executive Orders pursuant to the International Emergency Economic Powers Act ("IEEPA"). Plaintiff commenced this lawsuit seeking, inter alia, injunctive and monetary relief, including a "refund to Plaintiff [of] all IEEPA Duties collected on merchandise imported by Plaintiff, with interest as provided by law." Compl. at 10, ECF No. 2.

Plaintiff's entries are among the millions of entries that were entered subject to IEEPA duties, which the Supreme Court ruled unlawful in *Learning Resources, Inc. v. Trump*, 2026 WL 477534 (U.S. Feb. 20, 2026). All importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the *Learning Resources* decision.

In *Trump v. CASA, Inc.*, the Supreme Court held "that universal injunctions are impermissible." 606 U.S. 831, 865 (2025). That holding, however, does not apply to the orders that will be issued in this case. The Court's discussion of "whether, under the Judiciary Act of

**- Appx7 -**

1789, federal courts have equitable authority to issue universal injunctions" does not constitute a legal direction to this Court. *Id.* at 839. Nearly 200 years after the Judiciary Act of 1789, the United States Court of International Trade was established pursuant to the Customs Courts Act of 1980, Pub. L. No. 96-417, 94 Stat. 1727 (codified as amended in scattered sections of 28 U.S.C.). To that end the Court was provided with national geographic jurisdiction. *See* 28 U.S.C. § 1581.

The Court was also given exclusive subject matter jurisdiction to hear claims like those presented in this case. This exclusive jurisdiction was recently acknowledged by the Supreme Court. *See Learning Res., Inc.*, 2026 WL 477534, at *6 n.1 ("We agree with the Federal Circuit that the *V.O.S. Selections* case falls within the exclusive jurisdiction of the [United States Court of International Trade]."). That is, the parties to a case in no other court will be bound by this order. Moreover, when establishing this Court, Congress cited "[c]onsiderations of judicial economy, and the need to increase the availability of judicial review in the field of international trade in a manner which results in uniformity without sacrificing the expeditious resolution of import-related disputes." 126 CONG. REC. S13344 (daily ed. Sept. 24, 1980) (statement of Sen. Dennis DeConcini). The Constitution requires this uniformity. U.S. CONST. art. I § 8, cl. 1 (providing that "all Duties, Imposts and Excises shall be uniform throughout the United States").

Finally, the Chief Judge has indicated that I am the only judge who will hear cases pertaining to the refund of IEEPA duties. So there is no danger that another Judge, even one in this Court, will reach any contrary conclusions. To find otherwise would be to thwart the efficient administration of justice and to deny those importers who have filed suit the efficient resolution of their claims, and to deny entirely importers who have not filed suit the benefit of the *Learning Resources* decision.

Accordingly, it is hereby

Court No. 25-00689                                                                                    Page 3

      **ORDERED** that, with respect to any and all unliquidated entries that were entered subject to IEEPA duties, U.S. Customs and Border Protection is hereby directed to liquidate those entries without regard to the IEEPA duties. Any liquidated entries for which liquidation is not final shall be reliquidated without regard to those duties. Any liquidated entries for which liquidation is final shall be reliquidated without regard to the IEEPA duties. For the avoidance of doubt, nothing in this order addresses issues concerning duty free de minimis treatment under 19 U.S.C. § 1321 that are otherwise before this Court. *See Axle of Dearborn, Inc. v. Department of Commerce et al.* (1:25-cv-00091-3JP); and it is further

      **ORDERED** that this order is suspended to the extent that it requires immediate compliance.

_____
/s/ Richard K. Eaton
Judge

Dated: April 17, 2026
       New York, New York

**- Appx9 -**

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Circuit Rule 32(b)(1) because it contains 7,896 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Book Antiqua, a proportionally spaced typeface.

*/s/ Sophia Shams*

Sophia Shams