Nos. 26-1895, 26-1897, 26-1899

IN THE

# United States Court of Appeals for the Federal Circuit

---

V.O.S. SELECTIONS, INC., PLASTIC SERVICES AND PRODUCTS, LLC, *d/b/a Genova Pipe*, MICROKITS, LLC, FISHUSA INC., TERRY PRECISION CYCLING LLC,

*Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, *in his official capacity as President of the United States*, EXECUTIVE OFFICE OF THE PRESIDENT, UNITED STATES, RODNEY S. SCOTT, *Commissioner of U.S. Customs and Border Protection, in his official capacity as Commissioner of the United States Customs and Border Protection*, JAMIESON GREER, *U.S. Trade Representative, in his official capacity as United States Trade Representative*, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, HOWARD LUTNICK, *Secretary of Commerce, in his official capacity as Secretary of Commerce*, UNITED STATES CUSTOMS AND BORDER PROTECTION,

*Defendants-Appellants*.

---

AGS COMPANY AUTOMOTIVE SOLUTIONS, *et al.*,

*Plaintiffs*,

v.

UNITED STATES CUSTOMS AND BORDER PROTECTION, RODNEY S. SCOTT, *Commissioner of U.S. Customs and Border Protection, in his official capacity as Commissioner of U.S. Customs and Border Protection*, UNITED STATES,

*Defendants-Appellants*.

---

GRANT & BOWMAN, INC.,

*Plaintiff*,

v.

UNITED STATES CUSTOMS AND BORDER PROTECTION, RODNEY S. SCOTT, *Commissioner of U.S. Customs and Border Protection, in his official capacity as Commissioner of U.S. Customs and Border Protection*, UNITED STATES,

*Defendants-Appellants*.

---

Appeal from the United States Court of International Trade,
Nos. 25-66, 25-255, 25-689
(Hon. Richard K. Eaton)

---

**BRIEF FOR PLAINTIFFS-APPELLEES V.O.S. SELECTIONS, INC., PLASTIC SERVICES AND PRODUCTS, LLC, D/B/A GENOVA PIPE, MICROKITS, LLC, FISHUSA INC., TERRY PRECISION CYCLING LLC**

---

NEAL KUMAR KATYAL
COLLEEN E. ROH SINZDAK
*Counsel of Record*
CHASE J. HANSON
JESSICA C. HUANG
SAMANTHA K. ILAGAN
MILBANK LLP
1101 New York Ave., NW
Washington, DC 20005
Telephone: (202) 835-7570
crohsinzdak@milbank.com

October 5, 2026

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF INTEREST

Counsel for Plaintiffs-Appellees hereby certify the following:

1. **Represented Entities**. The full names of every entity represented by undersigned counsel in this case are as follows:

V.O.S. Selections, Inc.;

Plastic Services and Products, LLC, d/b/a Genova Pipe;

MicroKits, LLC;

FishUSA Inc.;

Terry Precision Cycling LLC.

2. **Real Parties in Interest**. Not applicable.

3. **Parent Corporations and Stockholders**. None.

4. **Legal Representatives**. The names of all law firms, partners, and associates that appeared for the entities in the originating court but have not and are not expected to do so in this Court are as follows:

Antonin Scalia Law School: Ilya Somin

Liberty Justice Center: Jeffrey M. Schwab; Reilly Stephens; Bridget F. Conlan

Milbank LLP: Ezra P. Louvis

5. **Related Cases**. The information in Plaintiffs-Appellees' prior notice of related case information, Dkt. No. 12, has not changed since the filing of that statement.

6. **Organizational Victims and Bankruptcy Cases**. Not applicable.

I certify the above information is true and complete to the best of my knowledge.

October 5, 2026

*<u>/s/ Colleen E. Roh Sinzdak</u>*
Colleen E. Roh Sinzdak

## TABLE OF CONTENTS

Page


INTRODUCTION ..... 1

STATEMENT OF ISSUES ..... 6

STATEMENT OF THE CASE ..... 7

A. Relevant Background ..... 7

B. The Refund Proceedings ..... 12

C. The Refund Injunction In This Case And CBP's Post-Injunction Refund Processing ..... 19

D. The Government's Refusal To Provide Refunds For Entries More Than 80 Days Past Liquidation Without Importer-Specific Injunctions ..... 23

STANDARD OF REVIEW ..... 27

SUMMARY OF ARGUMENT ..... 27

ARGUMENT ..... 31

I. THE CIT WAS WELL WITHIN ITS AUTHORITY TO ENTER THE INJUNCTION AT ISSUE HERE ..... 31

A. The Government Does Not Need Court Orders To Process And Pay Refunds On Entries More Than 80 Days Past Liquidation ..... 32

B. The CIT Is Authorized To Issue Injunctions That Establish Uniform Remedies For Unlawfully Collected Tariffs ..... 36

C. The Supreme Court's Decision In *CASA* Does Not Apply To The CIT ..... 39

## TABLE OF CONTENTS—Continued

Page


1. *CASA* Does Not Limit The Equitable Powers Of The CIT.......... 40

2. The Government's Arguments To The Contrary Lack Merit.......... 41

D. Even If *CASA* Applies, The Injunction Should Be Affirmed Because It Is Necessary To Afford Plaintiffs Complete Relief.......... 49

II. THE GOVERNMENT'S REMAINING ARGUMENTS LACK MERIT.......... 52

A. The Party-Presentation Principle Does Not Require Reversal.......... 52

B. The Balance Of The Harms Strongly Favors Affirming The CIT's Injunction.......... 57

CONCLUSION.......... 64

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

Page(s)

**CASES:**

*AGS Co. Auto. Sols.* v. *CBP*,
813 F. Supp. 3d 1298 (Ct. Int'l Trade 2025) .................. 8, 9, 10, 11, 12

*Am. Signature, Inc.* v. *United States*,
598 F.3d 816 (Fed. Cir. 2010) .................................................... 62, 63

*Doe* v. *Trump*,
157 F.4th 36 (1st Cir. 2025) ........................................................... 51

*Gill* v. *Whitford*,
585 U.S. 48 (2018) .......................................................................... 45

*In re Google Play Store Antitrust Litig.*,
147 F.4th 917 (9th Cir. 2025) ..................................................... 51, 52

*Greenlaw* v. *United States*,
554 U.S. 237 (2008) ........................................................................ 52

*Grupo Mexicano de Desarrollo, S.A.* v. *All. Bond Fund, Inc.*,
527 U.S. 308 (1999) ........................................................................ 40

*Learning Res., Inc.* v. *Trump*,
607 U.S. 229 (2026) ......................................... 6, 11, 12, 31, 36, 37, 46

*Margolin* v. *Nat'l Ass'n of Immigr. Judges*,
608 U.S. 339 (2026) ........................................................................ 52

*Massachusetts* v. *Mellon*,
262 U.S. 447 (1923) .................................................................. 44, 45

*McKesson Corp.* v. *Div. of Alcoholic Beverages & Tobacco*,
496 U.S. 18 (1990) .................................................................... 33, 34

**TABLE OF AUTHORITIES—Continued**

Page(s)

*Murthy* v. *Missouri*,
603 U.S. 43 (2024) ........ 45

*North Carolina* v. *Covington*,
581 U.S. 486 (2017) ........ 50, 51

*Oman Fasteners, LLC* v. *United States*,
125 F.4th 1068 (Fed. Cir. 2025) ........ 27

*Rhone Poulenc, Inc.* v. *United States*,
880 F.2d 401 (Fed. Cir. 1989) ........ 43, 46

*Rodriguez* v. *Robbins*,
715 F.3d 1127 (9th Cir. 2013) ........ 63

*Shinyei Corp. of Am.* v. *United States*,
355 F.3d 1297 (Fed. Cir. 2004) ........ 9, 24, 25, 34, 35, 36

*Trump* v. *CASA, Inc.*,
606 U.S. 831 (2025) ........ 2, 3, 4, 25, 40, 41, 44, 46, 49

*Trump* v. *Doe*,
146 S. Ct. 2810 (2026) ........ 51

*Trump* v. *Washington*,
146 S. Ct. 2809 (2026) ........ 51

*TRW Inc.* v. *Andrews*,
534 U.S. 19 (2001) ........ 42

*United States* v. *Sineneng-Smith*,
590 U.S. 371 (2020) ........ 27, 52, 55, 57

*United States* v. *U.S. Shoe Corp.*,
523 U.S. 360 (1998) ........ 13

Page(s)

*V.O.S. Selections, Inc.* v. *Trump*,
No. 25-1812, 2025 WL 1649290
(Fed. Cir. June 10, 2025) .................... 7, 8

*V.O.S. Selections, Inc.* v. *Trump*,
No. 25-1812, 2026 WL 574755
(Fed. Cir. Mar. 2, 2026).................... 12

*V.O.S. Selections, Inc.* v. *Trump*,
149 F.4th 1312 (Fed. Cir. 2025).................... 4, 5, 11, 42, 53

*V.O.S. Selections, Inc.* v. *United States*,
772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025) .................... 7, 55

*Washington* v. *Trump*,
145 F.4th 1013 (9th Cir. 2025) .................... 51

**CONSTITUTION:**

U.S. Const. art. I, § 8, cl. 1 .................... 3, 29, 37, 38, 45, 46, 47, 48

U.S. Const. art. I, § 8, cl. 4 .................... 47, 48

**STATUTES:**

19 U.S.C. §§

1501 .................... 9, 24, 34

1504(a)(1).................... 8

1505(b) .................... 8

1514 .................... 34

1514(a) .................... 8

Page(s)

1514(c)(3) .......... 8

1515 .......... 34

1520 .......... 33, 34, 35

1520(a) .......... 28, 33

1520(a)(1) .......... 33

28 U.S.C. §§

1581 .......... 36

1581(i)(1) .......... 2, 12, 36, 46

1585 .......... 4, 29, 37, 41, 42

2643 .......... 42

2643(c)(1) .......... 2, 3, 4, 29, 37, 38, 39, 41, 42, 47, 48

Customs Courts Act of 1980, Pub. L. No. 96-417, 94 Stat. 1727 .......... 38

Judiciary Act of 1789, 1 Stat. 73 .......... 40

**RULES & REGULATIONS:**

19 C.F.R. § 159.1 .......... 8

Ct. Int'l Trade R. 23(b)(2) .......... 6, 25, 26

**LEGISLATIVE MATERIAL:**

126 Cong. Rec. 27063 (1980) .......... 38, 48

Page(s)

**OTHER AUTHORITY:**

Mae Anderson, *As US Customs refines its tariff refund system, who gets in to apply is under dispute*, Associated Press (June 9, 2026), https://perma.cc/RC8N-YA8U ..................................................59

## STATEMENT OF RELATED CASES

This appeal arises from a case previously before this Court concerning the legality of tariffs imposed under the International Emergency Economic Powers Act (IEEPA). That appeal was docketed as *V.O.S. Selections, Inc.* v. *Trump*, No. 25-1812, and consolidated with *Oregon* v. *Trump*, No. 25-1813. This Court's en banc decision holding the IEEPA tariffs unlawful was issued on August 29, 2025, and is reported at 149 F.4th 1312. The Supreme Court subsequently affirmed this Court's decision. *Learning Res., Inc.* v. *Trump*, 607 U.S. 229 (2026).

The government also previously petitioned this Court for a writ of mandamus from an order compelling the testimony of the Commissioner of U.S. Customs and Border Protection (CBP) that was entered in the case below brought by V.O.S. Selections, Inc.; Plastic Services and Products, LLC d/b/a Genova Pipe; MicroKits, LLC; FishUSA Inc.; and Terry Precision Cycling LLC (Plaintiffs). That mandamus petition was docketed as *In re United States*, No. 26-144. After the en banc Court stayed the Court of International Trade (CIT)'s order pending resolution of the mandamus petition, see *In re United States*, No. 26-144, 2026 WL 2188887 (Fed. Cir. June 4, 2026) (per curiam), the CIT reconsidered its

order, and the United States withdrew its mandamus petition. This Court accordingly entered an order dismissing the mandamus petition on June 9, 2026.

Plaintiffs are not aware of any other related cases within the meaning of Federal Circuit Rule 47.5(b).

## INTRODUCTION

The fundamental question at the heart of this appeal is whether the Court of International Trade (CIT) has the authority to order the United States to honor its obligation to refund all of the tariffs it collected pursuant to the International Emergency Economic Powers Act (IEEPA), now that the Supreme Court has held those tariffs unlawful. The answer to that question is yes, and it is not even close.

To begin, there is no dispute that the United States is obligated to refund all of the IEEPA tariffs it unlawfully collected. The government has repeatedly acknowledged as much, including in its briefing before this Court. The government has also established a comprehensive administrative scheme—the Consolidated Administration and Processing of Entries (CAPE) system—for refunding IEEPA tariffs, through which it has already refunded or processed over $134 billion in illegally collected taxes. And the government has stated that it will refund *most* of the rest of the more than $166 billion in IEEPA tariffs without any judicial prompting, so long as the importers who paid those tariffs file appropriate claims through CAPE.

The government insists, however, that it cannot and will not process administrative refund claims for any importer who paid IEEPA tariffs on entries that liquidated more than 80 days before the importer requested relief through CAPE unless the importer first obtains (at great expense of party and judicial resources) an individualized order from the CIT. In other words, while the government has agreed to administratively refund the vast majority of illegally collected IEEPA tariffs, it is demanding (at 19) that a subset of importers must file individual complaints and obtain "importer-specific injunction[s]" from the CIT before they can avail themselves of the CAPE system. Moreover, the government insists that this arbitrary and burdensome individualized-order requirement is mandated by Congress, the Constitution, or the Supreme Court's decision in *Trump* v. *CASA, Inc.*, 606 U.S. 831 (2025). The government is wrong on all counts.

Congress did not impose any "importer-specific injunction" requirement for refunding tariffs that are indisputably unlawful. To the contrary, when Congress created the CIT to function as a specialized Article III court in 1980, it granted the CIT "exclusive jurisdiction" over all tariff cases nationwide, 28 U.S.C. § 1581(i)(1), and it authorized the

court to "order *any* … form of relief that is appropriate in a civil action, including, but not limited to … *injunctions*," *id.* § 2643(c)(1) (emphases added). Congress therefore empowered the CIT to issue an order enjoining the federal government to refund all unlawfully collected tariffs where that is "appropriate," and here—where the Supreme Court itself has held that the IEEPA tariffs are unlawful—it plainly is.

Moreover, Congress granted the CIT its broad authority over tariffs to vindicate the Constitution's command that "all Duties, Imposts and Excises shall be *uniform* throughout the United States." U.S. Const. art. I, § 8, cl. 1 (emphasis added). In the absence of a single court with broad injunctive power to order the government to refund all unlawfully collected tariffs, there would be a substantial risk that similarly situated importers would be awarded different relief in different cases—giving rise to the unequal tariff burdens the Uniformity Clause prohibits.

The Supreme Court's decision in *CASA* does not limit the CIT's ability to impose broad injunctive relief in accordance with the Uniformity Clause. Indeed, *CASA* does not apply to the CIT *at all* because it addressed whether the grant of "equity" authority in the Judiciary Act of 1789 endows federal district courts with the power to

issue universal injunctions to bar federal policies nationwide. 606 U.S. at 841-842. The CIT is not a district court, and its remedial authorities are not governed by the Judiciary Act of 1789. Rather, they are governed by the Customs Courts Act of 1980, which both grants the CIT "all the powers in law and equity of … a district court of the United States," 28 U.S.C. § 1585, and—*additionally*—grants it the power to issue "appropriate … injunctions," *id.* § 2643(c)(1). And because the Supreme Court has already held that enforcement of the IEEPA tariffs is unlawful, the CIT's injunction does not impose a new bar on federal policy; it merely vindicates the Supreme Court's holding by requiring the government to give back all of the money it illegally collected.

In any event, even if *CASA* somehow applies, the CIT's injunction comports with *CASA*'s requirements because it is necessary to afford Plaintiffs "complete relief." 606 U.S. at 851-852. Plaintiffs' injuries stem not just from their own direct payment of tariffs but also from the payments of other parties who passed those costs on to Plaintiffs. Broad injunctive relief is necessary to fully remedy those harms.

The government's remaining arguments are unavailing. It asserts that the CIT's order to refund all IEEPA tariffs violates the party-

presentation principle, but the CIT's order is directly responsive to this Court's remand order—which instructed "the CIT to reevaluate the propriety of granting injunctive relief and the proper scope of such relief, after considering … the Supreme Court's holding in *CASA*"—as well as Plaintiffs' request for injunctive relief. *V.O.S. Selections, Inc.* v. *Trump*, 149 F.4th 1312, 1340 (Fed. Cir. 2025). Further, after the CIT issued its initial refund injunction, the federal government did not move for reconsideration or otherwise demand additional briefing on the issue in the CIT; instead, for *months* it participated in the settlement conferences it now attacks before finally appealing after the CIT gave the government another opportunity to raise these issues through a show-cause hearing. The party-presentation principle presents no obstacle in these circumstances.

Finally, the government's contention that the equities counsel against the CIT's injunction is profoundly wrong. The government unlawfully collected over $166 billion in tariffs from American businesses. It has never asserted *any* reason why it is entitled to keep *any* of that money. Instead, it has attempted to make it as difficult as possible for a subset of importers to collect the money by imposing an

arbitrary importer-specific injunction requirement that finds no footing in statutes or precedent. The equities demand relief for the importers, not the government, in this situation.

Indeed, despite that the government has cloaked itself in the mantle of *CASA*, it has resisted the ready solution to its *CASA* concerns that Plaintiffs proposed, opposing the motions for the certification of an injunctive class under Rule 23(b)(2) that are currently pending before the CIT. The government's opposition (asserted even though *CASA* itself suggests the class-action mechanism for resolving similar cases, see 606 U.S. at 849-850) demonstrates that its intent is to impede refund efforts, not to vindicate the law.

This Court should therefore affirm the CIT's injunction, finally allowing *all* importers to obtain the uniform tariff relief to which they are entitled.

## STATEMENT OF ISSUES

Whether the Court of International Trade correctly enjoined the government to issue refunds for all IEEPA duties it unlawfully collected after the Supreme Court invalidated those tariffs in *Learning Resources, Inc.* v. *Trump*, 607 U.S. 229, 255 (2026).

## STATEMENT OF THE CASE

### A. Relevant Background.

1. In April 2025, President Trump issued Executive Order 14,257, imposing sweeping tariffs on virtually all imports, purportedly under the authority of the International Emergency Economic Powers Act of 1977. On April 14, 2025, days after the President announced those tariffs, Plaintiffs filed suit in the Court of International Trade to, among other things, enjoin the tariffs on the basis that IEEPA did not grant the President the power to impose them. In May 2025, a three-judge panel of the CIT agreed with Plaintiffs and granted them summary judgment, permanently enjoining the IEEPA tariffs. *V.O.S. Selections, Inc.* v. *United States*, 772 F. Supp. 3d 1350, 1383-84 (Ct. Int'l Trade 2025) (per curiam).

The government promptly moved in this Court for a stay. Mot. for Stay Pending Appeal, *V.O.S. Selections, Inc.* v. *Trump*, No. 25-1812 (Fed. Cir. May 29, 2025), Dkt. No. 6. In doing so, it stipulated that "[i]f tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any post-judgment interest that accrues." *Id.* at 25. On the basis of that

representation, this Court granted a stay pending appeal. *V.O.S. Selections, Inc.* v. *Trump*, No. 25-1812, 2025 WL 1649290, at *1 (Fed. Cir. June 10, 2025) (per curiam).

The government repeated and expanded on its refund stipulation in a series of follow-on suits filed by importers seeking to enjoin the "liquidation" of the entries on which they had paid IEEPA tariffs. *AGS Co. Auto. Sols.* v. *CBP*, 813 F. Supp. 3d 1298, 1302 (Ct. Int'l Trade 2025) (per curiam). "Liquidation" refers to the point in the administrative process for assessing tariffs in which the Customs and Border Protection agency (CBP) determines whether the amount of provisional duties an importer paid on her entry was correct. 19 C.F.R. § 159.1. Liquidation typically occurs somewhere within a year of the date on which the goods were imported. See 19 U.S.C. § 1504(a)(1). If CBP determines the amount the importer paid was too high, it will refund the excess, with interest. *Id.* § 1505(b).

If an importer believes that CBP has made a "clerical error, mistake of fact, or other inadvertence" in calculating her duties, she has 180 days after liquidation to file an administrative protest before CBP's tariff assessment becomes "final and conclusive." 19 U.S.C. §§ 1514(a), (c)(3).

The government may also voluntarily reliquidate the entries within 90 days of the original liquidation. 19 U.S.C. § 1501. Further, this Court has held that a court may order reliquidation at any point where it determines that the government owes a refund as a result of an error that is not addressed through the standard administrative process. *Shinyei Corp. of Am.* v. *United States*, 355 F.3d 1297, 1312 (Fed. Cir. 2004).

In cases like *AGS*, importers sought to prevent their IEEPA entries from liquidating before the Supreme Court could decide *Learning Resources*. Those importers feared that without an injunction preventing liquidation, the government would argue that their liquidated entries were not subject to an administrative protest under Section 1514, making a refund impossible. 813 F. Supp. 3d at 1300.

The government allayed these concerns by making it "very clear" that it would "not object to the [c]ourt ordering reliquidation of plaintiffs' entries subject to the challenged IEEPA duties if such duties are found to be unlawful." *Id.* at 1300-01 (quoting Def.'s Resp. in Opp'n to Pls.' Mot. for a Prelim. Inj. at 3, *AGS Co. Auto. Sols.* v. *CBP*, No. 25-255 (Ct. Int'l Trade Dec. 11, 2025), Dkt. No. 25); see Def.'s Resp. in Opp'n to Mot. for Prelim. Inj. & Summ. J. at 42, *V.O.S. Selections, Inc.* v. *Trump*, No. 25-

66 (Ct. Int'l Trade Apr. 29, 2025), Dkt. No. 32 ("[E]ven if future entries are liquidated, defendants do not intend to oppose the [c]ourt's authority to order reliquidation …. Such reliquidation would result in a refund of all duties determined to be unlawfully assessed, with interest."); Joint Stipulation Regarding Reliquidation ¶ 2, *Princess Awesome, LLC* v. *CBP*, No. 25-78 (Ct. Int'l Trade May 28, 2025), Dkt. No. 17 (Defendants "will not oppose the [c]ourt's authority to order reliquidation of entries of merchandise subject to the challenged IEEPA duties and that they will refund any IEEPA duties found to have been unlawfully collected, after a final and unappealable decision has been issued finding the duties to have been unlawfully collected and ordering defendants to refund the duties.").

The CIT denied the preliminary injunction based on these repeated stipulations that the government would "not oppose or object to the [c]ourt's authority to order reliquidation" and that "such reliquidation would result in a refund of all duties determined to be unlawfully assessed." 813 F. Supp. 3d at 1302 (citation omitted). The CIT explained that, by the government's own admission, it "would be judicially estopped from taking a contrary position" if and when the Supreme Court

invalidated the tariffs. *Ibid.* (citation omitted). The government subsequently reiterated that these stipulations would apply to all "current and future similarly situated plaintiffs." Defs.' Resp. to Court's Jan. 8, 2026 Letter at 2, *AGS*, No. 25-255 (Ct. Int'l Trade Jan. 8, 2026), Dkt. No. 34.

2. Ultimately, both this Court and the Supreme Court affirmed the CIT's determination that the IEEPA tariffs were unlawful. This Court explained that IEEPA's "mere authorization to 'regulate' does not in and of itself imply the authority to impose tariffs," and the government's proffered "interpretation of IEEPA as providing the President power to impose unlimited tariffs also runs afoul of the major questions doctrine." *V.O.S. Selections*, 149 F.4th at 1332-34. As for the remedy, the Supreme Court's intervening decision in *CASA* prompted the Court to remand to the CIT to "consider in the first instance whether its grant of a universal injunction" against the enforcement of the IEEPA tariffs "comport[ed] with the standards outlined by the Supreme Court in *CASA*." *Id.* at 1340.

In *Learning Resources*, the Supreme Court agreed with this Court that "IEEPA does not authorize the President to impose tariffs." 607 U.S.

at 255. The Supreme Court also "agree[d]" that this "case falls within the exclusive jurisdiction of the CIT" because "[P]laintiffs' challenges 'arise out of a law of the United States providing for tariffs.'" *Id.* at 240 n.1 (quoting 28 U.S.C. § 1581(i)(1)) (citation modified).

**B. The Refund Proceedings.**

Once the Supreme Court issued its decision holding the IEEPA tariffs unlawful, this Court issued its mandate so that the case could return to the CIT to allow it to consider the appropriate remedy. *V.O.S. Selections, Inc.* v. *Trump*, No. 25-1812, 2026 WL 574755, at *1 (Fed. Cir. Mar. 2, 2026) (per curiam). Plaintiffs hoped that the remedial question would be straightforward because the Supreme Court's decision made it illegal for the government to continue enforcing the IEEPA tariffs, and the government had repeatedly stipulated that it would "not oppose or object to the [CIT's] authority to order reliquidation" that "would result in a refund of all duties determined to be unlawfully assessed." *AGS*, 813 F. Supp. 3d at 1302 (citation omitted). Things did not prove so simple.

1. Shortly after the Supreme Court's decision, Plaintiffs filed a motion in the CIT for a permanent injunction against the IEEPA tariffs and to enforce the government's concessions that refunds would be

forthcoming for all unlawfully collected IEEPA duties. Appx30. Plaintiffs' motion for injunctive relief explained that the government had "repeatedly stipulated that it would provide refunds … if the tariffs were ultimately held unlawful" not just to Plaintiffs but also "to *all* similarly situated plaintiffs." Appx33-34.

Plaintiffs also explained that an injunction was warranted "to ensure that Defendants adopt and implement the most expeditious means of providing accurate refunds and interest payments," citing as an example the procedures established by the CIT in the wake of *United States* v. *U.S. Shoe Corp.*, 523 U.S. 360 (1998), which invalidated the Harbor Maintenance Tax. Appx36. Plaintiffs further observed that "the procedures developed in this case may serve as a template for ensuring expeditious relief in the numerous other current and future cases covered by the government's stipulation." Appx36.

2. While Plaintiffs' motion was still outstanding, the CIT announced that all pending IEEPA tariff challenges would be heard by a single judge, Judge Richard K. Eaton. See Appx16; Order of Reassignment, *V.O.S. Selections*, No. 25-66 (Ct. Int'l Trade Mar. 17, 2026), Dkt. No. 80. The CIT also stayed all of these IEEPA refund cases

with one exception, *Atmus Filtration, Inc.* v. *United States*, No. 26-1259 (Ct. Int'l Trade filed Feb. 27, 2026).

*Atmus* was a follow-on case filed shortly after *Learning Resources* was decided, in which the plaintiff sought a temporary restraining order "to suspend[] liquidation" of its "unliquidated entries" on which IEEPA tariffs had been imposed. Mot. for TRO at 1, *Atmus*, No. 26-1259 (Ct. Int'l Trade Feb. 27, 2026), Dkt. No. 3.

After Judge Eaton scheduled a hearing in *Atmus*, the parties filed a joint stipulation in which the government did not dispute the CIT's "authority to order reliquidation of entries subject to now invalidated duties imposed under [IEEPA]." Stipulation Regarding the Court's Authority to Order Reliquidation ¶ 1, *Atmus*, No. 26-1259 (Ct. Int'l Trade Mar. 3, 2026), Dkt. No. 16. The parties also stipulated that the CIT "possesses authority to order reliquidation of entries assessed with duties imposed under the invalidated IEEPA measures." *Id.* ¶ 2.

Following a hearing on March 4, 2026, the CIT issued an order directing CBP, "with respect to any and all unliquidated entries that were entered subject to the IEEPA duties," to "liquidate those entries without regard to the IEEPA duties" and to reliquidate "[a]ny liquidated

entries for which liquidation is not final" without regard to those duties. Order at 2-3, *Atmus*, No. 26-1259 (Ct. Int'l Trade Mar. 4, 2026), Dkt. No. 21. Shortly after issuing this broad injunction in *Atmus*, the CIT denied Plaintiffs' motion for a permanent injunction in an order issued without comment. Appx40-41.

3. The government did not appeal or seek reconsideration of the CIT's injunction in *Atmus*. Rather, two days after the court issued its order, CBP's Executive Director of Trade Programs, Brandon Lord, filed the first of several declarations explaining that CBP's existing import-processing system could not "process a volume of refunds anywhere near the volume of total entries … on which IEEPA duties have been deposited" and thus that CBP would need to "develop and implement" a new program to "streamline and consolidate refunds and interest payments." Decl. of Brandon Lord at ¶¶ 26-27, *Atmus*, No. 26-1259 (Ct. Int'l Trade Mar. 6, 2026), Dkt. No. 31. CBP represented that it needed approximately 45 days to develop that functionality. *Id.* ¶ 29. In response, the CIT "suspended" its order "to the extent that it directs immediate compliance." Order, *Atmus*, No. 26-1259 (Ct. Int'l Trade Mar. 6, 2026), Dkt. No. 33.

Over the ensuing weeks, the CIT held a series of conferences, before each of which it requested and received updates from CBP on the development of CAPE. *E.g.*, *Atmus*, No. 26-1259 (Ct. Int'l Trade), Dkt. Nos. 17, 19, 20, 23, 34, 36, 39, 47, 51. CBP's declarations explained that CBP "anticipate[d] a phased development for CAPE" and outlined the anticipated scope and functionality of Phase 1 of CAPE. Decl. of Brandon Lord ¶¶ 3-11, *Atmus*, No. 26-1259 (Ct. Int'l Trade Mar. 12, 2026), Dkt. No. 39.

On March 20, 2026, the CIT found CBP's reported progress satisfactory and amended its order to encompass all duties imposed under the challenged Executive Orders, including those on imports from Brazil and India. Order, *Atmus*, No. 26-1259 (Ct. Int'l Trade Mar. 20, 2026), Dkt. No. 49. Then, on March 27, 2026, the CIT further amended its order so that it required CBP to reliquidate "[a]ny liquidated entries for which liquidation is final" "without regard to the IEEPA duties." Order, *Atmus*, No. 26-1259 (Ct. Int'l Trade Mar. 27, 2026), Dkt. No. 50.

CBP did not seek additional briefing or hearings in conjunction with these revised orders, nor did it appeal them.

4. On March 30, 2026, CBP reported that it had been able to "expand the scope and functionality of Phase 1 of CAPE" and estimated that approximately 63% of entries with IEEPA duties paid or deposited would be able to be processed in Phase 1. Decl. of Brandon Lord ¶¶ 8, 14, *Atmus*, No. 26-1259 (Ct. Int'l Trade Mar. 31, 2026), Dkt. No. 51. As CBP described it, Phase 1 would process most entries that were either unliquidated or liquidated within the preceding 80 days, and would also accept entries with a liquidation status of "[s]uspended," "[e]xtended," or "[u]nder [r]eview," as well as warehouse and warehouse-withdrawal entries. *Id.* ¶ 14.

CBP also explained that several categories of entries would *not* be accepted in Phase 1, including entries flagged for reconciliation, entries designated on a drawback claim, entries covered by an open protest, entries not filed in the Automated Commercial Environment, and entries subject to antidumping or countervailing duties for which the Department of Commerce had issued liquidation instructions. *Id.* ¶¶ 14-15.

In addition, CBP stated that CAPE "Phase 1 will only process unliquidated entries and entries within the 90-day voluntary

reliquidation period." *Id.* ¶¶ 7, 15. The government did not, however, disclaim authority to issue refunds for 90-days-past-liquidation entries. Instead, CBP stated that it was "continu[ing] to identify and evaluate more complex refund scenarios and determine what additional CAPE capabilities are necessary to address those scenarios," and that it "expect[ed] to develop" functionalities to address, among other things, the "capability to process entries for which liquidation is final." *Id.* ¶ 16.

5. On April 8, 2026, the *Atmus* case was voluntarily dismissed. Order of Dismissal, *Atmus*, No. 26-1259 (Ct. Int'l Trade Apr. 8, 2026), Dkt. No. 54. The day after Atmus noticed its voluntary dismissal, the CIT lifted the stay in another refund case, *Euro-Notions Florida, Inc.* v. *United States,* Order, *Euro-Notions Fla., Inc.* v. *United States*, No. 25-595 (Ct. Int'l Trade Apr. 7, 2026), Dkt. No. 9. The CIT then entered the same order previously entered in *Atmus*, directing CBP to liquidate unliquidated entries and reliquidate non-final entries without regard to the IEEPA duties, again suspending the order "to the extent that it requires immediate compliance." Order, *Euro-Notions*, No. 25-595 (Ct. Int'l Trade Apr. 7, 2026), Dkt. No. 12. The CIT also ordered that CBP would "use the entries of Plaintiff Euro-Notions Florida, Inc. to test

CAPE Phase One." Order, *Euro-Notions*, No. 25-595 (Ct. Int'l Trade Apr. 8, 2026), Dkt. No. 13.

The CIT then continued in *Euro-Notions* the same series of conferences and status reports it had begun in *Atmus*, and CBP submitted additional declarations describing the status of its processing of IEEPA refunds through CAPE. *Euro-Notions*, No. 25-595 (Ct. Int'l Trade), Dkt. Nos. 15, 26, 28, 30, 34, 39, 45.

Once again, CBP did not seek additional briefing or hearings on the CIT's orders or its proceedings, nor did the government appeal.

### C. The Refund Injunction In This Case And CBP's Post-Injunction Refund Processing.

On April 17, 2026, the CIT lifted the stay of proceedings in this and several other cases and entered the injunction at issue in this appeal on each of those dockets. Appx1-9.

1. The injunction order begins by recognizing that Plaintiffs "commenced this lawsuit seeking, inter alia, injunctive and monetary relief, including 'damages in the amount of any tariffs collected by Defendants pursuant to the challenged orders.'" Appx1 (citation omitted). The order then explains that "[a]ll importers of record whose

entries were subject to IEEPA are entitled to the benefit of" the Supreme Court's merits decision in this case. Appx2.

The CIT's order further explains that the Supreme Court's decision in *CASA* "does not apply to the orders that will be issued in this case" because *CASA* concerned the equitable powers of the federal district courts under the Judiciary Act of 1789, and the CIT is not governed by that statute. Appx2. The order also observes that the CIT has "exclusive jurisdiction" and that it was created to advance "considerations of judicial economy" and to promote "uniformity" and the "expeditious resolution of import-related disputes." Appx2 (citation modified). In addition, the order contains an express finding that narrower injunctive relief would "thwart the efficient administration of justice[,] … deny those importers who have filed suit the efficient resolution of their claims, and … deny entirely importers who have not filed suit the benefit of the *Learning Resources* decision." Appx3.

The order then enjoins CBP to (1) liquidate "entries without regard to the IEEPA duties" for "any and all unliquidated entries that were entered subject to IEEPA duties," (2) reliquidate "[a]ny liquidated entries for which liquidation is not final" without regard to the IEEPA duties,

and (3) reliquidate "liquidated entries for which liquidation is final" without regard to the IEEPA duties. Appx3.

As with its other injunctions, the CIT sua sponte "suspended" the order "to the extent it requires immediate compliance." Appx3.

2. On April 20, 2026, CBP deployed the first phase of the CAPE program. Decl. of Brandon Lord ¶ 3, *Euro-Notions*, No. 25-595 (Ct. Int'l Trade Apr. 28, 2026), Dkt. No. 26. CBP's subsequent declarations reported steadily increasing refund activity: As of April 26, 2026, 75,306 CAPE declarations had been submitted, of which 47,315 passed file validation, covering 11,222,927 entries accepted for the removal of IEEPA duties. *Id.* ¶¶ 4-5; see Decl. of Brandon Lord ¶¶ 3-4, *Euro-Notions*, No. 25-595 (Ct. Int'l Trade May 12, 2026), Dkt. No. 28; Decl. of Brandon Lord ¶¶ 3-5, *Euro-Notions*, No. 25-595 (Ct. Int'l Trade May 26, 2026), Dkt. No. 30. And as of June 5, 2026, 181,155 declarations had been submitted (of which 125,576 passed validation), covering 16.74 million entries, of which 10.60 million had been liquidated or reliquidated, resulting in approximately $94.94 billion in refunds that had been accepted for CAPE processing. Decl. of Brandon Lord ¶¶ 3-5, *Euro-Notions*, No. 25-595 (Ct. Int'l Trade June 10, 2026), Dkt. No. 34.

CBP also continued to expand CAPE and deploy additional functionalities. On June 29, 2026, CBP rolled out Phase 2 of CAPE, which permitted "importers and their brokers to include entries on a CAPE declaration that are unliquidated (or that have liquidated within the preceding 80 days) and that were flagged for reconciliation," but that did not have a "Reconciliation Entry." Decl. of Brandon Lord ¶ 7, *Freestyle World, Inc.* v. *CBP*, No. 26-1088 (Ct. Int'l Trade Sep. 15, 2026), Dkt. No. 50. As of September 11, 2026, CAPE declarations covering 27.2 million entries have passed validation, of which 19.94 million have been reliquidated without IEEPA duties, resulting in approximately $134.7 billion in potential and certified refunds being processed through CAPE. *Id.* ¶¶ 4-5.

CBP has also announced the forthcoming deployment of CAPE Phase 3, "which covers finally liquidated entries filed by plaintiffs for which the [CIT] has ordered reliquidation" through an importer-specific injunction. Decl. of Brandon Lord ¶ 8, *Freestyle*, No. 26-1088 (Ct. Int'l Trade Aug. 25, 2026), Dkt. No. 38. According to CBP's latest declaration, Phase 3 will be deployed on October 6, 2026, meaning "[p]laintiffs who submitted a valid importer of record number to CBP by July 30, 2026,

will be able to file CAPE declarations for Phase 3." Decl. of Brandon Lord ¶ 8, *Freestyle*, No. 26-1088 (Ct. Int'l Trade Sep. 15, 2026), Dkt. No. 50.

### D. The Government's Refusal To Provide Refunds For Entries More Than 80 Days Past Liquidation Without Importer-Specific Injunctions.

While the government has agreed to process and pay refunds for most of the unlawful IEEPA tariffs either through the current CAPE system or through later iterations of it, there remains one important exception. The government refuses (at 19) to make CAPE available for processing and paying refunds on any entries that are more than 80 days past liquidation unless the importer files a complaint in the CIT and obtains an "importer-specific injunction."

1. The government first publicly announced that it would not adhere to the April 17 order in this case requiring reliquidation of *all* finally liquidated entries in briefing in connection with a show-cause order issued almost a month and a half after the CIT imposed the injunction. Defs.' Mot. to Amend Order at 2, *V.O.S. Selections*, No. 25-66 (Ct. Int'l Trade May 29, 2026), Dkt. No. 88.

On May 27, 2026, the CIT directed the parties "to show cause as to why the court should not remove the suspension of immediate compliance

with its order that [CBP] liquidate or reliquidate, without regard to IEEPA duties, all entries entered subject to IEEPA duties." Appx42. The government responded by (among other things) asserting that it would not pay refunds on entries that were more than 80 days past liquidation in the absence of an importer-specific order requiring it to do so. See Defs.' Resp. to Order to Show Cause and Mot. for a Stay Pending Appeal at 7-8, *V.O.S. Selections*, No. 25-66 (Ct. Int'l Trade June 4, 2026), Dkt. No. 98.

The government explained this position by suggesting that its statutory power to reliquidate entries terminates 90 days past liquidation under 19 U.S.C. § 1501. See Defs.' Mot. to Amend Order at 2, *V.O.S. Selections*, No. 25-66 (Ct. Int'l Trade May 29, 2026), Dkt. No. 88. According to the government, once this 90-day deadline passes, it cannot reliquidate entries and refund the IEEPA tariffs that the Supreme Court invalidated unless CBP receives an individualized court order requiring reliquidation. *Id.* at 2-3.

The government identified no provision expressly addressing CBP's authority to refund duties after the Supreme Court has held the underlying tariffs unlawful. See *ibid.* Instead, it cited a decision of this

Court recognizing that the CIT may order reliquidation. *Id.* at 2 (citing *Shinyei*, 355 F.3d at 1314 [sic]). And the government asserted that, under the Supreme Court's decision in *CASA*, injunctions requiring reliquidation must be importer-specific. *Id.* at 3 (citing *CASA*, 606 U.S. at 839). Taken together, this led the government to conclude that it could not and would not process or pay refunds through CAPE on entries that were more than 80 days past liquidation. Decl. of Brandon Lord ¶ 15(c), *Atmus*, No. 26-1259 (Ct. Int'l Trade Mar. 31, 2026), Dkt. No. 51. (Apparently, the government believes it is appropriate to shorten the statutory voluntary reliquidation period by 10 days to account for CAPE processing time. *Ibid.*)

The government also announced that it was finally going to appeal the CIT's injunction requiring refunds for all importers.

2. In response, Plaintiffs filed detailed briefs explaining why individualized injunctions were unnecessary both under the governing statutes and under *CASA*. Out of an abundance of caution, Plaintiffs also moved to certify a mandatory injunctive class under CIT Rule 23(b)(2) consisting of "[a]ll importers who paid tariffs imposed under the International Emergency Economic Powers Act and who hold claims that

are not currently eligible for processing and refund through the Consolidated Administration and Processing of Entries ('CAPE') program." Mot. for Class Cert., *V.O.S. Selections*, No. 25-66 (Ct. Int'l Trade June 4, 2026), Dkt. No. 99 at 1 (citation omitted).

Plaintiffs explained that certifying such an injunction-only class and issuing classwide injunctive relief would address the federal government's (unfounded) *CASA* concerns, while also avoiding the costly and burdensome individualized injunction proceedings the government maintained were necessary for importers with entries more than 80 days past liquidation.

The government opposed Plaintiffs' class-certification motion and a related motion for class certification in *Freestyle*, Defs.' Opp. to Mot. to Lift Stay and for Class Cert., *Freestyle*, No. 26-1088 (Ct. Int'l Trade July 28, 2026), Dkt. No. 18, insisting that only individualized orders will suffice, *id.* at 18.

3. The CIT held a hearing on its show-cause order on June 9, 2026. See Appx18. It has not, however, issued any further orders lifting the suspension of its injunction requiring the government to process and pay all IEEPA refunds. Accordingly, the injunction that is the subject of

this appeal remains "suspended to the extent it requires immediate compliance." Appx3.

The court also held a class-certification hearing in this case on August 6, 2026, and in *Freestyle* on August 19, 2026. Both class-certification motions remain pending.

## STANDARD OF REVIEW

This Court reviews the "grant of an injunction for abuse of discretion," which may be established by showing "a clear error of judgment" or by demonstrating that the CIT "exercised its discretion based on an error of law or clearly erroneous fact findings." *Oman Fasteners, LLC* v. *United States*, 125 F.4th 1068, 1084 (Fed. Cir. 2025) (citation modified).

Whether the CIT impermissibly deviated from the party-presentation principle is also reviewed for abuse of discretion. *United States* v. *Sineneng-Smith*, 590 U.S. 371, 375 (2020).

## SUMMARY OF ARGUMENT

This Court should affirm the CIT's injunction, which vindicates the Supreme Court's holding that all IEEPA tariffs are unlawful by requiring

the government to issue the refunds it has repeatedly stipulated that it will pay.

I. It is undisputed that the importers who paid $166 billion in unlawful IEEPA tariffs are entitled to a refund of all of that money, with interest. Indeed, the government professes a willingness to repay its obligations in full, and it has already processed or refunded over $130 billion through CAPE. The government insists, however, that it cannot and will not repay any of the money it illegally collected on entries that liquidated more than 80 days ago unless the importers who paid those unlawful tariffs first file suit and obtain individualized injunctions. The government is wrong many times over.

A. To begin, the government does not need any injunction to refund all of the money that the Supreme Court held that it unlawfully collected under IEEPA. While the government claims that it lacks the statutory authority necessary to reliquidate certain entries to facilitate refunds, it fails to even cite 19 U.S.C. § 1520(a), the statute authorizing refunds "on liquidation *or reliquidation*" (emphasis added). And the provisions the government does cite place no restrictions on reliquidation where, as here, a whole category of tariffs has been declared unlawful.

Nor does the government explain why Congress would create a refund scheme that forces an arbitrary subset of importers to file suit to obtain access to an administrative refund scheme that the rest of the importers can access directly, or—for that matter—how such a scheme could comport with due process.

B. Further, even assuming an injunction is required, the government is wrong to assert that it must be individualized. Congress granted the CIT exclusive nationwide jurisdiction over tariff disputes, and broad remedial authority that encompasses all the equitable powers of the district courts, 28 U.S.C. § 1585, *and* the authority to grant "injunctions" as "appropriate," *id.* § 2643(c)(1). In exercising this authority, the CIT reasonably found that it was "appropriate" to enjoin the government to refund all of the IEEPA tariffs it had collected because the Supreme Court held those tariffs were unlawful across the board. Moreover, this broad relief is consistent with the Constitution's command that all "Duties … shall be uniform." U.S. Const. art. I, § 8, cl. 1.

C-D. The government errs in asserting that the CIT's injunction violates the Supreme Court's decision in *CASA*. That case held that, under the Judiciary Act of 1789, the equitable powers of the district

courts do not include the authority to issue universal injunctions blocking the enforcement of federal policies unless those injunctions are necessary to afford complete relief to the plaintiffs. The CIT is not a district court; its powers are not governed by the Judiciary Act of 1789; its injunction vindicated a Supreme Court decision rather than barring a federal policy; and the order *is* necessary to afford Plaintiffs complete relief. The CIT's injunction therefore comports with *CASA*.

II. A. The government's party-presentation argument similarly fails. Plaintiffs' complaint requested a broad injunction, and this Court's remand order required the CIT to consider the propriety of such universal injunctive relief in light of the standards set out in *CASA*. The CIT adhered to this mandate by issuing its refund injunction and explaining why it was compatible with *CASA*. Moreover, after the CIT issued its first injunction, the government continued to participate in the CIT proceedings for months without asserting any party-presentation arguments. Its current protestations therefore come far too late.

B. Finally, the balance of harms and the public interest counsel firmly in favor of affirming the CIT's injunction. Doing so will ensure that the government does not improperly retain some arbitrary portion

of the $166 billion in unlawful tariffs it collected at the expense of American businesses and the American economy as a whole.

## ARGUMENT

### I. THE CIT WAS WELL WITHIN ITS AUTHORITY TO ENTER THE INJUNCTION AT ISSUE HERE.

It is undisputed that the United States must refund the over $166 billion in tariffs it unlawfully collected under IEEPA. In its merits decision in this case, the Supreme Court held that the President had no authority to impose tariffs under IEEPA, such that all of the IEEPA tariffs were unlawfully collected. See *Learning Res.*, 607 U.S. at 240, 255. Before the Supreme Court issued that decision, the government repeatedly stipulated that, "[i]f tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any post-judgment interest that accrues." Mot. for Stay Pending Appeal at 25, *V.O.S. Selections*, No. 25-1812 (Fed. Cir. May 29, 2025), Dkt. No. 6. And since *Learning Resources* was decided, the government has refunded or processed over $130 billion in unlawfully collected tariffs through the CAPE system, and it has expressed (at 10) its intent to continue to provide refunds through the CAPE system for most importers.

The government insists, however, that it is not required to provide refunds to *all* importers even though the CIT has issued an injunction requiring it to do just that. In the government's view, it is within its rights to refuse to grant refunds to any importer whose entries are more than 80 days past liquidation unless those importers obtain importer-specific injunctions.

That is flat wrong. Even setting aside the government's mistaken rationale for singling out these 80-days-past-liquidation importers, the government has no basis for insisting on individualized injunctions at all. The CIT has the statutory authority to issue broad injunctions where appropriate. And here, such an injunction is more than warranted given that the Supreme Court has already declared that all IEEPA tariffs are categorically unlawful. The government's arguments to the contrary sound primarily in a misapplication of *CASA*. They should therefore be rejected, and the injunction should be affirmed.

### A. The Government Does Not Need Court Orders To Process And Pay Refunds On Entries More Than 80 Days Past Liquidation.

As a threshold matter, it appears that this appeal may be predicated on CBP's misunderstanding of its authority to reliquidate and

refund entries with IEEPA tariffs that are more than 80 days past liquidation. According to the government (at 31), it is refusing to process and pay refunds on those entries without individualized injunctions because the government "has no statutory authority to reliquidate finally liquidated entries on its own accord." But if that is the only thing stopping CBP, then there is an easy fix: This Court can simply explain that CBP has misunderstood the limits on its statutory power because the agency already has the ability to reliquidate all entries on which IEEPA tariffs were unlawfully collected.

1. CBP's reliquidation and refund authority is reflected in 19 U.S.C. § 1520, the statute expressly governing tariff "[r]efunds and errors." Section 1520(a) provides that the "Secretary of the Treasury is authorized to refund duties … [w]henever it is ascertained on liquidation *or reliquidation* of an entry or reconciliation that more money has been deposited or paid as duties than was required by law to be so deposited" (emphasis added). The plain text establishes that Congress anticipated the "reliquidation" of entries to facilitate refunds where the importer paid "more money … as duties than was required by law." 19 U.S.C. § 1520(a)(1). And there is every reason to think that Congress intended

reliquidation and refunds in circumstances like these, where the Supreme Court has held that the tariffs in question were collected unlawfully and where the government itself has repeatedly stipulated that reliquidation is appropriate. Cf. *McKesson Corp.* v. *Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 36-39 (1990) (recognizing that the Due Process Clause requires states to provide "not only a fair opportunity to challenge the accuracy and legal validity of [a] tax obligation, but also a clear and certain remedy"—that is, a refund (citation modified)).

2. In asserting (at 31) that CBP nonetheless lacks the "authority to reliquidate" entries more than 80 days past liquidation, the government never cites Section 1520 at all. Instead, it relies (at 31) on 19 U.S.C. § 1501, which grants CBP the power to "[v]oluntar[ily]" reliquidate entries that are less than *90* days past liquidation, as well as provisions providing for reliquidation after a successful administrative protest, 19 U.S.C. §§ 1514, 1515. But those provisions describe certain situations in which CBP is empowered to order reliquidation; they do not purport to exhaust the circumstances in which reliquidation is permitted. Indeed, this Court already held as much in *Shinyei*, where it "reject[ed] the suggestion that the statute's silence … can be construed as a

prohibition of reliquidation" in contexts other than those governed by Section 1514. 355 F.3d at 1311-12.

Moreover, the government's understanding of the statutory scheme is illogical. It does not dispute that entries more than 80 days past liquidation *can be* reliquidated to refund the IEEPA tariffs the Supreme Court held unlawful, nor could it dispute that proposition given its repeated stipulations that reliquidation is available. See *supra* pp. 7-11 (describing stipulations). Instead, CBP merely contends that an individualized court order is a necessary precursor to reliquidation. But again, nothing in the statutory text imposes that requirement, and the government has not offered any reason why Congress would permit CBP to issue administrative refunds to the vast majority of importers who paid IEEPA tariffs while forcing an arbitrary subset of importers to undertake the additional burden of filing suit to obtain the same relief. This Court should therefore hold that, under Section 1520, CBP has the authority to "reliquidat[e]" any entry on which IEEPA tariffs were collected for the purpose of "refund[ing]" money "paid as duties" that has been held (by the Supreme Court, no less) to exceed what "was required by law." That should be enough to resolve this dispute because the

government has not offered any other reason for refusing to process and pay refunds on entries more than 80 days past liquidation.

### B. The CIT Is Authorized To Issue Injunctions That Establish Uniform Remedies For Unlawfully Collected Tariffs.

Even if the government is somehow correct that it cannot reliquidate certain entries without a court order, it already has one. The CIT's injunction expressly requires CBP to reliquidate all "liquidated entries for which liquidation is final." Appx3. Text, history, and the Constitution itself all establish that the CIT has "broad remedial powers" to issue injunctions like this one. *Shinyei*, 355 F.3d at 1312.

1. Start with the text. Section 1581 grants the CIT exclusive, nationwide jurisdiction over tariffs. That provision begins with a list of specific tariff disputes over which the CIT has "exclusive jurisdiction," and then concludes with a broad catch-all provision that grants the CIT "exclusive jurisdiction of any civil action commenced against the United States … that arises out of any law of the United States providing for … tariffs." 28 U.S.C. § 1581(i)(1). In *Learning Resources*, the Supreme Court confirmed that this sweeping grant of "exclusive jurisdiction" with respect to tariffs applies to this case. See 607 U.S. at 240 n.1 ("We agree

with the Federal Circuit that the *V.O.S. Selections* case falls within the exclusive jurisdiction of the CIT."); *id.* at 388 n.25 (Kavanaugh, J., dissenting) ("I agree with footnote 1 of the Court's opinion regarding jurisdiction.").

Congress also granted the CIT sweeping remedial authority by enacting two separate provisions governing the court's power to grant appropriate relief. The first, 28 U.S.C. § 1585, gives the CIT "all the powers in law and equity of, or as conferred by statute upon, a district court of the United States." The second, 28 U.S.C. § 2643(c)(1), goes further—separately granting the CIT the power to "order *any* other form of relief that is appropriate in a civil action, including, but not limited to … *injunctions*" (emphases added).

By coupling the CIT's grant of exclusive, nationwide jurisdiction over tariffs with the authority to issue "appropriate … injunctions," Congress demonstrated its intent to give the CIT the power to grant relief calculated to fully address violations of the tariff laws for affected importers nationwide.

2. History and the Constitution are in accord. Congress created the CIT in its current Article III form to vindicate the Constitution's

command that tariffs must be "uniform throughout the United States." U.S. Const. art. I, § 8, cl. 1. If every importer must seek individualized relief for the United States's unlawful imposition of tariffs, then distinctions in remedial orders may lead to similarly situated importers bearing very different tariff burdens.

Thus, in the Customs Courts Act of 1980, Pub. L. No. 96-417, 94 Stat. 1727 (codified as amended in scattered sections of 28 U.S.C.), Congress empowered the CIT to serve as the single, specialized Article III court for overseeing all tariff disputes. And it explained that this was necessary due to "[c]onsiderations of judicial economy, and the need to increase the availability of judicial review in the field of international trade in a manner which results in *uniformity* without sacrificing the expeditious resolution of import-related disputes." 126 Cong. Rec. 27063 (1980) (statement of Sen. DeConcini) (emphasis added).

The CIT cannot serve the efficiency and constitutional uniformity interests that prompted its creation if it is barred from issuing injunctions that compel the federal government to grant refunds to all those affected by the same illegal tariff exaction. That does not mean that such broad injunctions are permissible in every case; Section

2643(c)(1) specifically requires that any remedy, including an injunction, must be "appropriate." A broad injunction may not be appropriate where, for example, the case is in a preliminary posture and the merits are heavily disputed, or where the nature of the alleged violation requires highly individualized remedial determinations.

In a case like this one, however, there can be no real dispute that a broad injunction is "appropriate." After all, the Supreme Court itself has held that the IEEPA tariffs are unlawful in all of their applications, and it is undisputed that all importers are entitled to the exact same relief—a refund of their unlawfully collected tariffs, with interest. The CIT's broad injunction is therefore well within its remedial powers.

### C. The Supreme Court's Decision In *CASA* Does Not Apply To The CIT.

The government barely engages with the statutory framework governing the CIT's remedial authority. Instead, most of its argument is devoted to the assertion that *CASA* limits the CIT to issuing importer-specific injunctions. But *CASA* does not apply to the CIT because that decision concerns the authority of federal district courts under the Judiciary Act of 1789. The CIT is not a district court, and its authority

is not governed by the Judiciary Act of 1789. The government's arguments to the contrary uniformly fail.

#### *1.* CASA *Does Not Limit The Equitable Powers Of The CIT.*

In *CASA*, the Supreme Court held that "under the Judiciary Act of 1789," federal district courts generally lack the "equitable authority to issue universal injunctions." 606 U.S. at 839. The Court explained that the Judiciary Act grants district courts jurisdiction over " all suits … in equity," a statutory grant that "encompasses only those sorts of equitable remedies 'traditionally accorded by courts of equity' at our country's inception." *Id.* at 841 (first quoting Judiciary Act of 1789, 1 Stat. 73, 78; then quoting *Grupo Mexicano de Desarrollo, S.A.* v. *All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999)). The Court further determined that universal injunctions barring the federal government from enforcing a statute or policy are not "sufficiently 'analogous' to the relief issued … 'at the time of the adoption of the Constitution and the enactment of the original Judiciary Act.'" *Id.* at 841-842 (citation omitted). They therefore fall outside the scope of the traditional equitable relief authorized by that statute. *Ibid.*

None of that reasoning applies to the CIT. It is not a federal district court, nor are its powers restricted in accordance with the conception of "equity" embodied within the original Judiciary Act. To be sure, the CIT enjoys the same remedial powers in "law and equity" as the district courts, 28 U.S.C. § 1585, but it *also* enjoys the authority to "order *any* other form of relief that is appropriate in a civil action, including, but not limited to … injunctions," *id.* § 2643(c)(1) (emphasis added). That authority is in no way tied to the Judiciary Act of 1789 or its history. Rather, that separate power to issue appropriate injunctions was codified in 1980 when, according to *CASA* itself, the "use" of "universal injunctions" was already "gradually accelerat[ing]." 606 U.S. at 845.

*2. The Government's Arguments To The Contrary Lack Merit.*

a. The government's assertion that *CASA* applies fails out of the gate because the government does not acknowledge the CIT's authority under Section 2643; indeed, its brief never even cites that provision despite the fact that Plaintiffs have relied heavily on it in their briefing before the CIT. See Pls.' Resp. to Order to Show Cause at 9-10, *V.O.S. Selections*, No. 25-66 (Ct. Int'l Trade June 4, 2026), Dkt. No. 97. Instead of grappling with Section 2643, the government repeatedly observes that

Section 1585 gives the CIT the same power as the district court. Again, that is irrelevant, because Section 2643 is a separate grant of injunctive power distinct from that of the district courts.

Section 1585 is therefore a floor, not a ceiling. It guarantees that the CIT is no less well-equipped than a federal district court. But nothing in its text forbids remedial authority beyond a district court's, and reading it that way would render Section 2643(c)(1) superfluous. *TRW Inc.* v. *Andrews*, 534 U.S. 19, 29 (2001) (courts avoid statutory interpretation that "would in practical effect render [statutory language] entirely superfluous in all but the most unusual circumstances").

The government errs in suggesting (at 23) that this Court's precedents are to the contrary. It asserts that this Court's en banc decision on the merits recognized that *CASA* controls and that the CIT's remedial powers are coextensive with federal district courts'. In fact, this Court simply remanded to the CIT to "consider in the first instance whether its grant of a universal injunction comports with the standards outlined by the Supreme Court in *CASA*." 149 F.4th at 1340. The Court nowhere cited Section 2643 and resolved no question about the source or scope of the CIT's remedial authority. And the CIT complied with this

Court's remand mandate in its injunctive order by determining that broad injunctive relief comports with *CASA* because the restrictions in the Judiciary Act of 1789 do not apply to the CIT. Appx2.

The government similarly errs in invoking (at 23) this Court's decision in *Rhone Poulenc, Inc.* v. *United States*, 880 F.2d 401 (Fed. Cir. 1989), for the proposition that the CIT's remedial powers are "coextensive with" those of federal district courts. *Rhone* held that, since 1980, the CIT has had remedial authority that is at least as broad as a district court's; it did not suggest the CIT's powers could be no broader. See *id.* at 402, 407.

The government also warns (at 25) that if this Court accepts this view of the CIT's authority, then federal district courts' remedial powers could vary depending on whether a court was "established through separate legislation after 1789." But that misunderstands the argument; the scope of the CIT's remedial authority does not depend purely on the date of its creation. It is predicated on the very different nature of the statutory provisions governing the CIT's jurisdiction and remedial authority.

b. The government next argues (at 25-26) that recognizing the CIT's authority to issue this relief would raise Article III concerns and thus should be avoided. But this argument goes well beyond *CASA*, where the Supreme Court "express[ed] no view on the Government's argument that Article III forecloses universal relief." 606 U.S. at 841 n.4. And it is highly doubtful that the Supreme Court would ever embrace that aggressive argument—which depends on the assertion that a court can never issue relief beyond what is necessary to remedy the plaintiff's specific injury—given that this theory would invalidate well-established forms of relief such as the vacatur of rules under the Administrative Procedure Act (APA). See *id.* at 869 (Kavanaugh, J., concurring) (recognizing that, "in cases under the [APA], plaintiffs may ask a court to preliminarily 'set aside' a new agency rule").

Regardless, the cases the government says support constitutional avoidance (at 25-26) are unavailing. *Massachusetts* v. *Mellon*, 262 U.S. 447 (1923), concerned Massachusetts's attempt to litigate its citizens' generalized grievances concerning a federal statute. *Id.* at 485-486. There, the Supreme Court held that Massachusetts lacked standing to sue because only the federal government, not the states, may bring a

*parens patriae* suit "to protect citizens of the United States from the operation of the statutes thereof." *Ibid.* In *Murthy* v. *Missouri*, 603 U.S. 43 (2024), the Supreme Court held that the plaintiffs lacked standing because there was no "concrete link between their injuries and the defendants' conduct." *Id.* at 76. And in *Gill* v. *Whitford*, 585 U.S. 48 (2018), the Supreme Court again cautioned that plaintiffs may not rely on "generalized grievance[s]" to establish Article III standing and remanded "so that the plaintiffs may have an opportunity to prove concrete and particularized injuries using evidence." *Id.* at 68, 73 (citation modified).

Plaintiffs, by contrast, suffered severe, concrete injuries to their livelihoods as a result of the IEEPA tariffs, easily satisfying Article III's standing requirements. And as explained *infra* pp. 49-51, the injunction entered by the CIT is necessary for complete relief, so the government's Article III musings are beside the point. *Gill*, 585 U.S. at 66.

c. The government next makes an unsuccessful effort (at 26-27) to brush aside the import of the CIT's nationwide jurisdiction over tariff-related matters and the Constitution's command that "all Duties,

Imposts and Excises shall be uniform throughout the United States," U.S. Const. art. I, § 8, cl. 1.

While a court's jurisdiction and its remedial authority are undoubtedly distinct, here, the broad scope of the CIT's jurisdiction is highly relevant in confirming Congress's intent to grant the CIT correspondingly broad remedial powers. This Court has recognized the CIT as "a national court under Article III of the Constitution" "[w]ith nationwide geographic jurisdiction" whose creation marked a "milestone in its march toward full maturity within the federal judiciary." *Rhone*, 880 F.2d at 402.

It would be odd if such a court, vested with exclusive nationwide jurisdiction, 28 U.S.C. § 1581(i)(1), had to parcel out its remedies importer by importer. And the classic concerns counseling against universal relief—such as forum shopping, a single district court's control over national policy, hindrance of federal law's development, or conflicting injunctions, see *CASA*, 606 U.S. at 855-856—are not implicated here, where the Supreme Court has held that the IEEPA tariffs are unlawful, *Learning Res.*, 607 U.S. at 255, and the court

ordering relief has exclusive, nationwide jurisdiction over actions challenging those tariffs.

As to the Constitution's uniformity requirement, the government argues (at 27) that it cannot "expand" the CIT's remedial power. It can, however, provide yet further corroboration of Congress's desire to give the CIT power to issue broad "injunctions" when they are "appropriate." 28 U.S.C. § 2643(c)(1). The government responds (at 27) that the Uniformity Clause does not demand a broad remedy, as it would not, for example, render unconstitutional the CIT's dismissal of a suit for untimeliness or failure to prosecute. But where procedural rules are applied uniformly, they likely comport with the Clause. The problem for the government is that there is no procedural rule barring the CIT from issuing broad injunctions, and imposing such a rule by judicial fiat would interfere with the Uniformity Clause's goal of ensuring equal treatment for similarly situated importers.

The government also invokes (at 27) the "uniformity requirements for rules of naturalization and bankruptcy," U.S. Const. art. I, § 8, cl. 4. Those clauses are meaningfully distinct. While the Constitution generally commands that "all Duties, Imposts and Excises shall be

uniform throughout the United States," *id.* cl. 1, its uniformity requirement for naturalization and bankruptcy is narrower: *Congress* may "*establish* an uniform Rule of Naturalization, and uniform Laws on the subject of Bankruptcies throughout the United States," *id.* cl. 4 (emphasis added).

That distinction between the tariff context, and the naturalization and bankruptcy contexts, is reflected in the structure of the federal judiciary. For tariff actions, Congress created a single court with exclusive nationwide jurisdiction and gave it authority to grant "*any* … form of relief that is appropriate, … including … *injunctions*." 28 U.S.C. § 2643(c)(1) (emphases added). Congress understood that this consolidation of jurisdiction over tariff disputes in the CIT—and the CIT alone—"results in uniformity." 126 Cong. Rec. 27063 (1980) (statement of Sen. DeConcini). There is no similar court with exclusive, nationwide jurisdiction over naturalization or bankruptcy actions—perhaps because as to naturalization and bankruptcy, the Constitution is concerned only with the *enactment* of uniform federal laws, which does not bear on the scope of court-ordered relief.

### D. Even If *CASA* Applies, The Injunction Should Be Affirmed Because It Is Necessary To Afford Plaintiffs Complete Relief.

The government's *CASA*-based arguments also fail because, even if *CASA*'s Judiciary Act restrictions apply, they are satisfied. *CASA* held that a district court may issue the injunctive orders necessary to ensure that the plaintiffs receive "complete relief." 606 U.S. at 851-852. Here, affording Plaintiffs complete relief requires enjoining the government to process and pay refunds on all IEEPA tariffs.

From the outset, Plaintiffs have explained that they were harmed by the IEEPA tariffs not merely because they were forced to pay the tariffs themselves, but also because other parties passed on the financial burdens of the tariffs to Plaintiffs and their businesses. Thus, several Plaintiffs paid their duties through third-party importers such as FedEx and UPS, so any order limited to Plaintiffs would not remedy the harm they suffered from those third-party-importer payments. Pls.' Resp. to Order to Show Cause at 8, *V.O.S. Selections*, No. 25-66 (Ct. Int'l Trade June 4, 2026), Dkt. No. 97.

Moreover, all of the Plaintiffs were forced to pay increased prices on goods purchased from other direct importers. Plaintiffs described these

harms in the declarations supporting their initial requests for injunctive relief against the unlawful tariffs. For example, the declaration of FishUSA's President, Dan Pastore, explained that "[m]any if not most of the products that FishUSA purchases from domestic suppliers are sourced in whole or in part from abroad, meaning that *almost all of its inventory sources will be impacted by the tariffs at some level*." Ex. D (Decl. of Dan Pastore) to Pls.' App. for TRO and Mot. for Prelim. Inj. and/or Summ. J. or Permanent Inj. ¶ 11, *V.O.S. Selections*, No. 25-66 (Ct. Int'l Trade Apr. 18, 2025), Dkt. No. 10 (emphasis added); see also *id.* at Ex. E (Decl. of Nikolaus Holm) ¶ 7 ("Terry Cycling's US-based manufacturing partner imports fabrics and trims from several other countries including Guatemala, El Salvador, China, and the European Union to produce products domestically for Terry Cycling.").

Because Plaintiffs bore the costs of the IEEPA tariffs not only on their own imports but also through third-party importers and domestic suppliers that passed those costs along, their injuries cannot be remedied solely by ordering the refund of the duties they paid directly to the government. An injunction that requires the government to pay refunds to all importers is therefore "what is necessary, what is fair, and what is

workable” to provide complete relief here. *North Carolina* v. *Covington*, 581 U.S. 486, 488 (2017) (per curiam) (citation omitted).

Indeed, since *CASA*, multiple courts of appeals have held in analogous circumstances that similarly broad relief was necessary to afford complete relief to certain plaintiffs. See, *e.g.*, *Doe* v. *Trump*, 157 F.4th 36, 80-82 (1st Cir. 2025) (Barron, C.J.) (upholding the imposition of a “universal” injunction in part because “[n]othing in *CASA* provides that, as a categorical matter, it is improper for a district court to impose an injunction of such breadth if it is necessary to do so to provide the plaintiff with complete relief” and because the government had not “fleshed out how any narrower injunction would work … without imposing material administrative or financial burdens on the plaintiffs” (citation omitted)), *cert. denied*, 146 S. Ct. 2810 (2026) (mem.); *Washington* v. *Trump*, 145 F.4th 1013, 1038 (9th Cir. 2025) (upholding the imposition of a “universal preliminary injunction” as “necessary to provide the [plaintiff] States with complete relief”), *cert. denied*, 146 S. Ct. 2809 (2026) (mem.); *In re Google Play Store Antitrust Litig.*, 147 F.4th 917, 958 (9th Cir. 2025) (“*CASA*’s holding about district courts’ authority under the Judiciary Act of 1789 has no bearing on whether the district

court here exceeded its equitable powers under Section 16 of the Clayton Act.”). This Court should recognize and hold the same in this case.

## II. The Government’s Remaining Arguments Lack Merit.

### A. The Party-Presentation Principle Does Not Require Reversal.

Failing on its *CASA* arguments, the government asserts that the CIT violated the party-presentation principle by considering whether a universal injunction was warranted following the Supreme Court’s decision in *Learning Resources*. This concocted argument is unavailing.

The party-presentation principle reflects that “[i]n our adversarial system of adjudication … ‘we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.’” *Sineneng-Smith*, 590 U.S. at 375 (quoting *Greenlaw* v. *United States*, 554 U.S. 237, 243 (2008)). As such, “courts are ‘essentially passive instruments of government’ … and decide ‘only the questions presented.’” *Margolin* v. *Nat’l Ass’n of Immigr. Judges*, 608 U.S. 339, 342 (2026) (per curiam) (citation omitted). But as the Supreme Court has observed, “[t]he party presentation principle is supple, not ironclad,” and “[t]here are no doubt circumstances in which a modest initiating role for a court is appropriate.” *Sineneng-Smith*, 590 U.S. at 376.

For several reasons, the party-presentation principle supplies no basis for reversal here.

1. For starters, this Court remanded this case to the CIT to consider the very argument the government contends no party presented. Specifically, the Court asked the CIT to "consider in the first instance whether its grant of a universal injunction comports with the standards outlined by the Supreme Court in *CASA*." *V.O.S. Selections*, 149 F.4th at 1340. By issuing an order that both enjoins the government to issue all refunds and explains why that injunction is consistent with *CASA*, the CIT adhered to this Court's remand instructions. Appx1-3.

The government intimates that the remand order in this case is irrelevant because Plaintiffs stated that they were "no longer seek[ing] to defend the nationwide scope of the" CIT's original injunction. Gov't Br. 32 (quoting Appx32). But that badly mischaracterizes Plaintiffs' argument: Plaintiffs explained that there was no need for the CIT to decide the propriety of its original nationwide injunction because the Supreme Court had already held that any enforcement of the IEEPA tariffs would be unlawful, Appx32, and the government had already stipulated that it would pay refunds if the tariffs were held unlawful,

Appx33-34. In other words, Plaintiffs were arguing that a broad injunction appeared unnecessary, not that they believed the CIT was barred from issuing such relief.

That is clear from the very same paragraph of Plaintiffs' pleading from which the government repeatedly quotes. The full paragraph explained that the Supreme Court's judgment "renders the parties' dispute about the scope of the injunction largely academic" because "[r]egardless of whether [the CIT's] permanent injunction against the operation of IEEPA tariffs applies solely to Plaintiffs or nationwide, the government cannot impose IEEPA tariffs on *anyone* without violating the Supreme Court's decision." Appx32.

Further, in the bold-faced header of the very next section of the brief, Plaintiffs asserted that the CIT "should grant permanent injunctive relief that enforces Defendants' stipulation that they would pay IEEPA tariff refunds." Appx33. The body of the section then asked the CIT to "enter an order requiring the government to issue the administrative orders necessary to promptly effectuate the invalidation of the IEEPA tariffs—including any administrative orders necessary to ensure that Plaintiffs swiftly receive the refunds, with interest, that the

government has committed to provide." Appx33. The government is therefore mistaken in suggesting that no party asked the CIT to enforce the government's obligation to refund all of the IEEPA tariffs it unlawfully collected.

In any event, there is no question that (as the CIT's injunction order recognized) Plaintiffs' complaint sought universal injunctive and monetary relief for "any tariffs collected by Defendants pursuant to the challenged [Executive] orders," Appx1 (quoting Compl. at 24, *V.O.S. Selections*, No. 25-66 (Ct. Int'l Trade Apr. 14, 2025), Dkt. No. 2), the CIT's original order granted nationwide injunctive relief, *V.O.S. Selections*, 772 F. Supp. 3d at 1384-85, and this Court's remand order required the CIT to consider the propriety of that remedy, *V.O.S. Selections*, 149 F.4th at 1340. Plaintiffs' (obviously mistaken) view that the Supreme Court's holding and the government's stipulations made the question of nationwide injunctions "largely academic," Appx32, did not prevent the CIT from issuing such an injunction when it became clear that one was necessary, see *Sineneng-Smith*, 590 U.S. at 376 (recognizing that "[t]here are no doubt circumstances in which a modest initiating role for a court is appropriate").

2. Further, the government's party-presentation argument flounders because it failed to raise any concerns about party presentation in the CIT until long after the court issued its injunctions. Indeed, after the original March 4 order, the government spent months participating in settlement conferences and submitting status reports in connection with the CIT's injunction—all without appealing the order or submitting any filing in the CIT indicating that it believed that there should be more briefing or argument on the lawfulness of the injunction. See *supra* pp. 15-19.

It was only on June 4, after the CIT had already entered the same injunction several times over and expanded it to its current state, that the government first raised a party-presentation argument in its response to a CIT show-cause order. Defs.' Resp. to Order to Show Cause and Mot. for a Stay Pending Appeal at 9-10, *V.O.S. Selections*, No. 25-66 (Ct. Int'l Trade June 4, 2026), Dkt. No. 98. And by that point, the government had already appealed the injunction in this case, Appx44, thereby leaving the CIT incapable of meaningfully addressing the government's concerns.

The "supple," judicially created party-presentation principle does not allow a litigant to sit on its hands throughout months of trial-court proceedings, only to complain to the appellate court that it never got a chance to weigh in. *Sineneng-Smith*, 590 U.S. at 376.

### B. The Balance Of The Harms Strongly Favors Affirming The CIT's Injunction.

In a last-ditch effort to evade the injunctions, the government contends that the CIT failed to adequately consider the remaining injunction factors, which ask courts to consider the harms to the parties and the public. That is incorrect. The CIT's findings establish that the balance of the harms favors the broad injunction it issued. And the government's contrary arguments—which boil down to the assertion (at 36) that the "balance-of-equities and public-interest factors" require an arbitrary subset of importers to file costly and burdensome individualized suits—cannot withstand scrutiny.

1. In its injunction order, the CIT found that broad relief was appropriate because any more modest injunction would "thwart the efficient administration of justice," "deny those importers who have filed suit the efficient resolution of their claims," and "deny entirely importers who have not filed suit the benefit of the *Learning Resources* decision."

Appx3. That finding was more than sufficient to establish that the balance of the equities and the public interest favor an injunction requiring refunds for all importers.

Indeed, setting aside the government's erroneous *CASA*-based arguments, it is hard to imagine how a court could reach any other result. The Supreme Court held that the IEEPA tariffs were all unlawful. The government has never offered a reason why it might be entitled to keep any of the tariffs it unlawfully collected from any importer. To the contrary, by both word and deed, the government has repeatedly acknowledged its obligation to repay all of the $166 billion it took, with interest. The government's *sole* (misguided) legal objection is that it lacks statutory authority to reliquidate and refund IEEPA tariffs for importers whose entries liquidated more than 80 days ago, such that a court order is necessary for reliquidation of those entries.

The obvious—and the most equitable—solution is the one the CIT adopted: an injunction requiring reliquidation of all entries on which IEEPA tariffs were charged, regardless of when those entries liquidated. That injunction avoids forcing one subset of importers to commence individual actions and obtain materially identical court orders merely

because their entries happened to fall outside CAPE's 80-day processing window.

It also avoids the significant burdens on the judicial system that the government's approach imposes. The harms from that approach are already apparent: More than 4,000 IEEPA refund cases have been filed in the CIT, Mae Anderson, *As US Customs refines its tariff refund system, who gets in to apply is under dispute*, Associated Press (June 9, 2026), https://perma.cc/RC8N-YA8U, and the government itself acknowledges (at 29) that "thousands of suits" have been brought.

Requiring still more individualized actions would impose substantial costs on importers, further burden the CIT, and waste the litigation resources of the federal government itself. The CIT's injunction avoids those unnecessary proceedings by allowing refunds to be processed directly through the administrative system CBP has already created for that purpose.

2. The government's suggestion that the balance of the equities or the public interest bars this solution borders on the absurd. To be perfectly clear, the government's position is that it is somehow more equitable or better for the public interest for the CIT to force every

importer whose entry happens to be more than 80 days past liquidation to go through the expensive and time-consuming process of filing their own complaints and obtaining their own orders, even though the government acknowledges (at 19) that those importers are entitled to the "importer-specific injunction[s]" that will ultimately issue.

Even worse, because the CAPE system is not currently open to all importers, the pool of affected importers continues to grow, as more entries pass the 80-days-post-liquidation mark. And the government has resisted every effort to find an alternative judicial solution that will obviate the need for wasteful individualized proceedings—opposing the motion for certification of an injunctive class that was filed by Plaintiffs in this case, and similarly opposing a broader motion for class certification in *Freestyle*. Opp. to Mot. for Class Cert., *V.O.S. Selections*, No. 25-66 (Ct. Int'l Trade June 25, 2026), Dkt. No. 105; Defs.' Opp. to Mot. to Lift Stay and for Class Cert., *Freestyle*, No. 26-1088 (Ct. Int'l Trade July 28, 2026), Dkt. No. 18. Yet the government has never once explained why individualized suits are in its interest, giving rise to the possibility that its sole goal is to increase the obstacles to obtaining

refunds in order to increase the amount of unlawfully collected taxes it is able to retain.

3. This Court should not assist the government in accomplishing such an improper purpose, and the government's more specific arguments on the injunction factors do not move the needle. The government argues (at 35), for example, that the broad injunction is unnecessary to prevent irreparable harm because Plaintiffs' injury will be fully redressed by narrower injunctive relief. As explained, the injunction here is necessary to afford complete relief because Plaintiffs have been harmed by the tariffs imposed on third parties. See *supra* pp. 49-51. And in any event, this argument is simply a rehashing of the government's failed assertion that *CASA* prevents the court from issuing non-plaintiff-specific relief.

The government also contends (at 37) that the equities counsel against the injunction because the "CBP cannot simply snap its fingers and finish the rest of the refund process overnight." But the premise is wrong: The CIT expressly suspended its injunction "to the extent that it requires immediate compliance." Appx3. The injunction therefore does not require CBP to process every remaining refund overnight or divert

its workforce from other responsibilities. It establishes the government's obligation to reliquidate the affected entries while leaving room for orderly implementation.

Remarkably, the government also insists (at 37) that "even an *effort* to comply with the CIT's injunction would harm CBP and the public." According to the government, administering refunds to everyone who paid the illegal IEEPA tariffs "would 'severely disrupt[]' CBP's other functions and responsibilities." *Ibid.* (citation omitted). That position, however, cannot be reconciled with the fact that CBP is already processing and paying refunds through the CAPE system. The government has offered no reason why affirming the CIT's injunction would somehow make it impossible for it to continue to do so. Nor has the government explained why it will be harder for CBP to process refunds for importers with entries more than 80 days past liquidation once this Court affirms that there is no need for those importers to obtain individualized injunctions first.

4. Finally, the government's arguments about the public interest cannot be squared with this Court's holding that "[t]he public interest is served by ensuring that governmental bodies comply with the law, and

interpret and apply trade statutes uniformly and fairly." *Am. Signature, Inc.* v. *United States*, 598 F.3d 816, 830 (Fed. Cir. 2010).

After *Learning Resources*, there is no doubt that the IEEPA tariffs were unlawful from the outset, and CBP's collection of those duties was illegal. The CIT's order merely ensures the government remedies the unlawful action it took and does not unlawfully retain those wrongfully collected duties. The government "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez* v. *Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). And here, that principle applies with even greater force because the CIT's injunction merely enforces the refund remedy that the government repeatedly stipulated would be appropriate in fending off injunctive relief before the Supreme Court ruled. See *supra* pp. 7-11.

## CONCLUSION

For the foregoing reasons, this Court should affirm the injunction.

Dated: October 5, 2026

Respectfully submitted,

/s/ Colleen E. Roh Sinzdak

NEAL KUMAR KATYAL
COLLEEN E. ROH SINZDAK
*Counsel of Record*
CHASE J. HANSON
JESSICA C. HUANG
SAMANTHA K. ILAGAN
MILBANK LLP
1101 New York Ave., NW
Washington, DC 20005
Telephone: (202) 835-7570
crohsinzdak@milbank.com

*Counsel for Plaintiffs-Appellees V.O.S. Selections; Plastic Services and Products, LLC d/b/a Genova Pipe; MicroKits, LLC; FishUSA Inc.; and Terry Precision Cycling LLC*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32(b)(1) because it contains 12,245 words, excluding the items exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(b)(2).

This brief complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because this brief has been prepared in 14-point Century Schoolbook font using Microsoft Office Word for Office 365.

October 5, 2026

*/s/ Colleen E. Roh Sinzdak*
Colleen E. Roh Sinzdak

*Counsel for Plaintiffs-Appellees V.O.S. Selections; Plastic Services and Products, LLC d/b/a Genova Pipe; MicroKits, LLC; FishUSA Inc.; and Terry Precision Cycling LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on October 5, 2026.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

October 5, 2026

*/s/ Colleen E. Roh Sinzdak*
Colleen E. Roh Sinzdak

*Counsel for Plaintiffs-Appellees V.O.S. Selections; Plastic Services and Products, LLC d/b/a Genova Pipe; MicroKits, LLC; FishUSA Inc.; and Terry Precision Cycling LLC*