**Nos. 2026-1895, -1897, -1899**

---

# IN THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

V.O.S. SELECTIONS, INC., PLASTIC SERVICES AND PRODUCTS, LLC, dba Genova Pipe, MICROKITS, LLC, FISHUSA INC., TERRY PRECISION CYCLING LLC,

Plaintiffs-Appellees,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, EXECUTIVE OFFICE OF THE PRESIDENT, UNITED STATES, RODNEY S. SCOTT, Commissioner of U.S. Customs and Border Protection, in his official capacity as Commissioner of the United States Customs and Border Protection, JAMIESON GREER, U.S. Trade Representative, in his official capacity as United States Trade Representative, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, HOWARD LUTNICK, Secretary of Commerce, in his official capacity as Secretary of Commerce, UNITED STATES CUSTOMS AND BORDER PROTECTION,

Defendants-Appellants.

---

AGS COMPANY AUTOMOTIVE SOLUTIONS, et al.,

Plaintiffs,

v.

UNITED STATES CUSTOMS AND BORDER PROTECTION, RODNEY S. SCOTT, Commissioner of U.S. Customs and Border Protection, in his official capacity as Commissioner of U.S. Customs and Border Protection, UNITED STATES,

Defendants-Appellants.

---

GRANT & BOWMAN, INC.,

Plaintiff,

v.

UNITED STATES CUSTOMS AND BORDER PROTECTION, RODNEY S. SCOTT, Commissioner of U.S. Customs and Border Protection, in his official capacity as Commissioner of U.S. Customs and Border Protection, UNITED STATES,

Defendants-Appellants.

---

On Appeal from the United States Court of International Trade
Nos. 25-66, -246, -249, -251, -252, -253, -254, -255, -256, -257, -260, -262, -263, -264, -266, -267, -268, -269, -270, -271, -274, -275, -276, -277, -278, -281, -285, -286, -288, -290, -292, -293, -294, -295, -296, -297, -301, -302, -304, -305, -306, -308, -310, -311, -316, -326, -329, -331, -333, -347, -348, -351, -387, -437, -448, -451, -463, -473, -479, -498, -499, -501, -502, -503, -505, -520, -525, -526, -529, -530, -540, -559, -563, -569, -575, -579, -593, -689, -694, -696, -704, -710, -712, -713, -724, -737, -739, -740, -779, -789, -799, -820, -832, -836, -842, -849, -852, -854, -855, -856, -857, -859, -867, -879, -881, -885, -896, -900, Judge Eaton

---

# REPLY BRIEF FOR APPELLANTS

---

BRETT A. SHUMATE
*Assistant Attorney General*

*Additional counsel inside cover*

BRAD HINSHELWOOD
DANIEL WINIK
SOPHIA SHAMS
DOUGLAS C. DREIER
*Attorneys, Appellate Staff*
*Civil Division, Room 7213*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-2000*

# TABLE OF CONTENTS

**<u>Page</u>**


TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ........................................................................ 1

ARGUMENT ........................................................................ 3

THE CIT EXCEEDED ITS AUTHORITY IN ENTERING THE UNIVERSAL INJUNCTIONS ........................................................................ 3

A. The CIT Lacks Jurisdiction To Enter Universal Injunctions ........ 3

B. The CIT's Orders Must Be Vacated For Violating The Party-Presentation Principle ........................................................................ 12

C. The CIT Failed To Apply The Equitable Factors For Injunctive Relief ........................................................................ 19

CONCLUSION ........................................................................ 24

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Apple, Inc. v. Samsung Elecs. Co.*,
678 F.3d 1314 (Fed. Cir. 2012) ........................................ 10

*Atmus Filtration, Inc. v. United States*,
2026 WL 616128 (Ct. Int'l Trade Mar. 4, 2026) ........................ 13, 18

*Barnes v. United States*,
788 F. Supp. 3d 1309 (Ct. Int'l Trade 2025) ........................... 11

*Davilla v. Enable Midstream Partners L.P.*,
913 F.3d 959 (10th Cir. 2019) ........................................ 10, 20

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) .................................................. 10

*Euro-Notions Fla., Inc. v. CBP*,
2026 WL 2199710 (Ct. Int'l Trade Apr. 7, 2026) ........................ 18

*FS Credit Opportunities Corp. v. Saba Cap. Master Fund, Ltd.*,
608 U.S. 608 (2026) .................................................. 7

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*,
527 U.S. 308 (1999) .................................................. 5

*Hecht Co. v. Bowles*,
321 U.S. 321 (1944) .................................................. 6

*Kennedy v. Braidwood Mgmt., Inc.*,
606 U.S. 748 (2025) .................................................. 8

*Learning Res., Inc. v. Trump*,
607 U.S. 229 (2026) .................................. 8, 9, 12, 13, 15, 19

*Margolin v. National Ass'n of Immigr. Judges*,
608 U.S. 339 (2026) .................................................. 18

*Murthy v. Missouri*,
603 U.S. 43 (2024) ................................................... 11

*New Comm Wireless Servs., Inc. v. SprintCom, Inc.*,
287 F.3d 1 (1st Cir. 2002) .......... 20

*Rhone Poulenc, Inc. v. United States*,
880 F.2d 401 (Fed. Cir. 1989) .......... 3

*Sherley v. Sebelius*,
644 F.3d 388 (D.C. Cir. 2011) .......... 10, 20

*Shinyei Corp. of Am. v. United States*,
355 F.3d 1297 (Fed. Cir. 2004) .......... 22

*Simon v. Eastern Ky. Welfare Rights Org.*,
426 U.S. 26 (1976) .......... 11-12

*Totes-Isotoner Corp. v. United States*,
594 F.3d 1346 (Fed. Cir. 2010) .......... 11

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) .......... 2, 3, 4-5, 6, 8, 9, 12, 19, 20, 21

*United States v. Sineneng-Smith*,
590 U.S. 371 (2020) .......... 13, 18

*V.O.S. Selections, Inc. v. Trump*,
149 F.4th 1312 (Fed. Cir. 2025) (en banc) .......... 15, 17

*Weinberger v. Romero-Barcelo*,
456 U.S. 305 (1982) .......... 6

*Winter v. NRDC*,
555 U.S. 7 (2008) .......... 19

**Statutes and Legislative Materials:**

19 U.S.C. § 1500 .......... 22

19 U.S.C. § 1501 .......... 22

19 U.S.C. § 1514 .......... 22

19 U.S.C. § 1515 .......... 22

19 U.S.C. § 1520 .......... 21

28 U.S.C. § 1585 ........................................................................................ 3, 8
28 U.S.C. § 2643 ................................................................................ 3, 4, 5, 8
126 Cong. Rec. 27063 (1980)........................................................................7

**Rules:**

Fed. R. App. P. 4 ........................................................................................ 18

**Executive Orders and Regulations:**

Exec. Order No. 14389, 91 Fed. Reg. 9437 (Feb. 20, 2026) ............................... 9
19 C.F.R. § 159.1 ........................................................................................ 22

## INTRODUCTION

This Court should vacate the CIT's plainly unlawful universal injunctions. Of the three sets of plaintiffs in these consolidated appeals, only one group—the *V.O.S. Selections* plaintiffs—have filed a brief attempting to defend the universal injunctions. That is unsurprising, because the universal injunctions do nothing to help any of the importer plaintiffs in these cases, all of whom have availed themselves of CBP's CAPE system for refunds on non-finally liquidated entries and have brought suits in which they can obtain importer-specific orders for refunds on otherwise finally liquidated entries. The *V.O.S. Selections* plaintiffs make only a passing attempt to argue that the universal injunctions actually help *them*, and they rely on a theory of Article III injury that this Court has rejected.

Instead, the *V.O.S. Selections* plaintiffs attempt to defend the injunctions essentially on the theory that they were appropriate means of helping *other* importers not before the Court—namely, those that have not filed suits in which they can obtain refunds for post-liquidation entries. But the *V.O.S. Selections* plaintiffs have no basis to assert *those* importers' interests before this Court. Their brief amounts to an uninvited amicus curiae filing on behalf of the CIT. And in any event, their central argument—that CBP is wrong

to think it needs judicial orders to issue refunds on otherwise finally liquidated entries—is beside the point. Whether or not such orders are *necessary* (though, to be clear, they are), such orders have been entered in these cases, and the question before the Court is whether they are lawful. The answer is that they are not, because they are universal in scope. The government has not appealed any of the importer-specific injunctions that the CIT has entered, because those are not similarly unlawful.

When the *V.O.S. Selections* plaintiffs do get around to addressing the universal scope of the injunctions, what they have to say is uniformly unpersuasive. They claim (Br. 36-48) that the CIT has a special font of equitable power not subject to the constraints articulated in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), but they fail to explain—and there is no reason—why *CASA*'s constraints would not equally apply to that power. They fail to establish that universal relief here could possibly be permissible under *CASA*. Their efforts to argue that the CIT respected the rule of party presentation rely on an imaginative reconstruction of what actually happened before the CIT. And they cannot defend the CIT's utter failure to consider the equitable factors for injunctive relief.

This Court should vacate the universal injunctions.

## ARGUMENT

## THE CIT EXCEEDED ITS AUTHORITY IN ENTERING THE UNIVERSAL INJUNCTIONS

### A. The CIT Lacks Jurisdiction To Enter Universal Injunctions

**1.** *Trump v. CASA, Inc.* held that "[a] universal injunction can be justified only as an exercise of equitable authority, yet Congress has granted federal courts no such power." 606 U.S. 831, 841 (2025). The Supreme Court did not limit its holding to federal district courts but rather applied it to all "federal courts." *Id.* Nothing in *CASA* suggests that the rules are any different for the CIT, which is also a federal trial court.

The CIT's effort to exempt itself from *CASA* fails because its organic statute grants it "the powers in law and equity of, or as conferred by statute upon, a district court of the United States." 28 U.S.C. § 1585; *see Rhone Poulenc, Inc. v. United States*, 880 F.2d 401, 402 (Fed. Cir. 1989). Plaintiffs make no effort to rebut our argument that § 1585 cannot possibly confer on the CIT broader equitable authority than it confers on all district courts.

Instead, plaintiffs invoke (Br. 41-43) a different provision—28 U.S.C. § 2643(c)(1)—which they characterize as an independent font of equitable power. But the CIT did not rely on that provision in its decision, Appx1-3,

and for good reason. Section 2643—entitled "Relief"—simply specifies the types of relief that the CIT may enter in various types of cases. Section 2643(a), for example, specifies the types of cases in which the CIT "may enter a money judgment." Section 2643(b) specifies the circumstances in which it "may order a retrial or rehearing." And Section 2643(c) states that, "in addition to the orders specified in subsections (a) and (b)," the CIT may (with certain enumerated exceptions) "order any other form of relief that is appropriate in a civil action, including, but not limited to, declaratory judgments, orders of remand, injunctions, and writs of mandamus and prohibition." 28 U.S.C. § 2643(c)(1).

Nothing in § 2643(c)(1) speaks to the *scope* of the CIT's power to issue injunctions or any other form of equitable relief. It simply says that equitable relief is a type of relief the CIT may grant, while limiting the availability of such relief in the types of cases enumerated in § 2643(c)(2), (3), (4), and (5). Certainly nothing in § 2643(c)(1) could be read to *expand* the CIT's power to issue injunctive relief beyond that possessed by district courts. Even if § 2643(c)(1) were treated as an independent font of equitable power, by its plain terms, § 2643(c)(1) allows the CIT to enter only those forms of equitable relief that are "appropriate in a civil action." And *CASA* makes clear that

universal injunctions are not a form of relief "appropriate in a civil action." *See* 606 U.S. at 856 ("Under our well-established precedent, the equitable relief available in the federal courts is that 'traditionally accorded by courts of equity' at the time of our founding. Nothing like a universal injunction was available at the founding[.]" (citation omitted) (quoting *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999))). Section 2643(c)(1) is thus best understood as allowing the CIT to issue equitable relief that is "appropriate" with respect to the parties before it, not as authorizing the CIT to transgress the traditional limits of equity and issue universal relief.

Plaintiffs fail to salvage (Br. 45-48) the CIT's assertion that the Constitution requires treating the CIT as possessing the unique power to issue universal injunctions. Plaintiffs do not appear to embrace the CIT's actual reasoning, which, as our opening brief explained (at 27), would render unconstitutional any statutes of limitations that may limit importers' ability to seek refunds of tariffs before the CIT. Instead, plaintiffs assert (Br. 47) that, to the extent that Congress's intent in passing the Customs Courts Act is ambiguous, the Court should presume that Congress intended to authorize the CIT to issue universal injunctions because any other interpretation "would

interfere with the Uniformity Clause's goal of ensuring equal treatment for similarly situated importers." That gets matters backwards: remedies should be construed in accordance with "traditions of equity practice," *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944), and courts "do not lightly assume that Congress has intended to depart from established principles" of equity, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982); *see Hecht*, 321 U.S. at 329 (explaining that courts expect Congress to make "an unequivocal statement of its purpose" if it intends to make "a drastic departure from the traditions of equity practice"). As *CASA* makes clear, the settled tradition of equity practice is that equitable remedies are party-specific. And in any event, the text of the relevant provisions is not ambiguous: Congress expressly gave the CIT the same authority to issue injunctive relief that federal district courts possess—no more, no less.

Nor is it persuasive for plaintiffs to argue (Br. 38) that "[t]he CIT cannot serve the efficiency and constitutional uniformity interests that prompted its creation if it is barred from issuing injunctions that compel the federal government to grant refunds to all those affected by the same illegal tariff exaction." As an initial matter, this is exactly the sort of policy concern that *CASA* held was irrelevant to the availability of universal relief, 606 U.S. at 856. In

any event, it is misplaced. The relevant policy interests in efficiency and uniformity are served by the fact that the CIT will hear all challenges to a given tariff and that appeals in all such challenges are consequently channeled to the Federal Circuit. Once a single such challenge has been litigated through an appeal, the Federal Circuit's ruling will govern all other such challenges. The fact that individual importers may need to file actions to obtain *refunds* of invalidated tariffs in no way undermines the centralizing purpose of the CIT.

The nationwide and specialized nature of the CIT's jurisdiction in no way changes this analysis. Plaintiffs' only support (Br. 38) for the assertion that the CIT's nationwide jurisdiction should be read as necessarily authorizing the court to issue universal injunctions is a statement in the Congressional Record by a single Senator that does not even mention universal injunctions, *see* 126 Cong. Rec. 27063 (1980) (statement of Sen. DeConcini), and, in any event, does not support expanding the CIT's equitable authority to issue relief beyond that of any other federal district court, *see FS Credit Opportunities Corp. v. Saba Cap. Master Fund, Ltd.*, 608 U.S. 608, 621 (2026) (rejecting use of legislative reports to "divin[e] how Congress would have wanted courts to resolve the question presented in [a] case").

Even if plaintiffs had identified some ambiguity in the CIT's statutes or the policy concerns underlying them, constitutional concerns would counsel against reading the relevant provisions to confer a special power on the CIT. While the Supreme Court has not yet definitively answered whether Article III would allow Congress to authorize universal injunctions, multiple Justices have recognized that "serious constitutional questions would arise" if Congress did so. *CASA*, 606 U.S. at 862 (Thomas, J., concurring) (collecting authorities). Thus, the canon of "constitutional avoidance would counsel against adopting [this] expansive interpretation" of the CIT's authority. *Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748, 775 (2025). The much sounder interpretation of Congress's actions is that Congress gave the CIT the same powers as "a district court," 28 U.S.C. § 1585, with the same ability as district courts to award relief "appropriate in a civil action," *id.* § 2643(c)(1).

Equally unavailing is amici's suggestion (Br. 6-8) that, because the CIT has "case management authority," it may order universal relief as a means of facilitating compliance with *Learning Resources, Inc. v. Trump*, 607 U.S. 229 (2026). The CIT has at its disposal, and has used in this case (without objection from the government), any number of "case management" tools,

including the assignment of all IEEPA refund cases to a single judge and the simultaneous entry of the same importer-specific injunction on hundreds of case dockets. But the CIT cannot, in the name of "case management," enter equitable relief the Supreme Court has made clear it does not possess.

Nor, in any event, is a universal injunction necessary to facilitate compliance with *Learning Resources*. The government immediately complied with *Learning Resources*, which held the IEEPA tariffs unlawful, by no longer imposing those tariffs on new entries. *See, e.g.*, Exec. Order No. 14389, 91 Fed. Reg. 9437 (Feb. 20, 2026) (signed the same day the Supreme Court issued *Learning Resources*). The government has cooperated in refunding the IEEPA tariffs to importers who seek refunds by legally available means, but *Learning Resources* simply does not speak to the question of what means for refunds are legally available, which is the subject of this litigation. *See Learning Res.*, 607 U.S. at 390 (Kavanaugh, J., dissenting) (noting the majority "says nothing today about whether, and if so how, the Government should go about returning the billions of dollars that it has collected from importers").

**2.** Plaintiffs have no more compelling argument that the universal injunctions should be upheld under the *CASA* standard as necessary to provide "complete relief," *CASA*, 606 U.S. at 851-853.

To begin, the Court cannot affirm the injunctions on that theory because the CIT did not rely on it. It is well established that an appellate court cannot assume how a trial court would exercise its discretion in considering the equities and, therefore, cannot affirm an injunction on equitable grounds not considered by the trial court. *See, e.g.*, *Sherley v. Sebelius*, 644 F.3d 388, 397-398 (D.C. Cir. 2011) (noting that, because "the decision whether to grant a preliminary injunction is a matter of discretion, not a question of right," "it is for the district court to determine, in the first instance, whether the plaintiffs' showing on a particular claim warrants preliminary injunctive relief"); *Davilla v. Enable Midstream Partners L.P.*, 913 F.3d 959, 974 (10th Cir. 2019) (applying the same principle in reviewing a permanent injunction). That is because granting or denying an injunction is a matter of equitable discretion for the trial court, *see, e.g.*, *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (permanent injunctions); *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1323 (Fed. Cir. 2012) (preliminary injunctions), and the role of appellate courts is only to determine whether the district court has acted within its discretion—not to exercise in the first instance discretion that properly belongs to the trial court.

On the merits, the *V.O.S. Selections* plaintiffs' theory fares no better. They argue (Br. 50) that, "[b]ecause Plaintiffs bore the costs of the IEEPA tariffs not only on their own imports but also through third-party importers and domestic suppliers that passed those costs along, their injuries cannot be remedied solely by" party-specific injunctions. But the *V.O.S. Selections* plaintiffs lack standing based on anything other than tariffs that they paid as importers; they lack standing as purchasers. *See Totes-Isotoner Corp. v. United States*, 594 F.3d 1346, 1352 (Fed. Cir. 2010) ("Importers suffer an injury in fact as they are legally required to pay the allegedly discriminatory tariff. The purchasers have no remedy to challenge the tariff classification."); *Barnes v. United States*, 788 F. Supp. 3d 1309, 1316-1317 (Ct. Int'l Trade 2025) (dismissing for lack of standing tariffs challenge brought by a consumer). And even if purchasers suffered an injury in fact, they have failed to demonstrate—and could not demonstrate—that an order issuing universal relief will remedy their purported injury because their theory would require all importers to pass on voluntarily any refunds to others downstream in the supply chain. "[I]t is a bedrock principle that a federal court cannot redress 'injury that results from the independent action of some third party not before the court.'" *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quoting *Simon v. Eastern*

*Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)); *see id.* at 58 ("At the preliminary injunction stage … the plaintiff must make a 'clear showing' that she is 'likely' to establish each element of standing."). "Complete relief" does not refer to any injury a plaintiff might happen to have, but only injuries that plaintiffs have standing to litigate. *See CASA*, 606 U.S. at 861 (granting the government's applications to partially stay the preliminary injunctions "to the extent that the injunctions are broader than necessary to provide complete relief to each plaintiff with standing to sue").

Moreover, the *V.O.S. Selections* plaintiffs' suggestion that they need a universal injunction to receive complete relief is belied by their initial motion for injunctive relief immediately after the Supreme Court issued *Learning Resources*. That motion did not argue that an injunction in their favor would need to be universal in scope to provide them complete relief. Appx30-37. And for good reason: they do not need—and never needed—a universal injunction to receive complete relief for their cognizable injuries.

### B. The CIT's Orders Must Be Vacated For Violating The Party-Presentation Principle

Even if the CIT's universal injunctions were consistent with *CASA*, moreover, they should be vacated because they were issued with no regard

for the party-presentation principle. Plaintiffs are correct that the principle is "supple, not ironclad." *United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020). But it is not nearly flexible enough to accommodate the CIT's conduct here, which did not remotely resemble the "modest initiating role" that can sometimes be appropriate for courts to assume, *id.*

Plaintiffs can argue otherwise only by offering an imaginative caricature of the procedural history. From reading their brief, one might think that on remand from this Court after the Supreme Court's decision in *Learning Resources*, plaintiffs proposed and the CIT granted a universal injunction as a form of "complete relief."

None of that resembles reality. As our opening brief explains in greater detail, "[i]t is difficult to overstate how irregular these proceedings have been." Gov't Br. 3; *see, e.g.*, *id.* at 1-5, 11-19. The universal injunction entered in each of the cases before the Court was initially entered in another case, *Atmus Filtration, Inc. v. United States*, 2026 WL 616128 (Ct. Int'l Trade Mar. 4, 2026). Not only had the plaintiff in that case never sought universal relief, but it had attempted to withdraw even its motion for an importer-specific injunction. In other words, the CIT entered this universal injunction not just *without regard for* the plaintiff's litigation choices but in a manner

*contrary to* those litigation choices. And things got no better from there. When that plaintiff finally managed to extricate itself from the CIT by voluntarily dismissing its suit, the CIT judge simply picked several other cases in which to enter the same universal injunction, once again acting entirely of its own accord and without any briefing.

Unsurprisingly, the *V.O.S. Selections* plaintiffs emphasize that they had previously moved for injunctive relief (Appx30-37). But the CIT outright denied that motion. Appx38-39. Thus, the CIT itself recognized that its sua sponte order for universal relief, Appx1-3, was not responsive to any request the *V.O.S. Selections* plaintiffs had made. And how could it have been, when it merely duplicated the order that the CIT had sua sponte entered in other cases?

In any event, plaintiffs mischaracterize even their own motion. The motion did not contain a single argument (like those that now appear in plaintiffs' appellate brief) that an injunction in their favor would appropriately be universal in scope. Appx30-37. If plaintiffs had intended to argue that a universal injunction was appropriate—either because *CASA* does not apply to the CIT or because a universal injunction would be consistent with *CASA*—one would have expected them to make some argument to that

effect, after this Court had specifically instructed that "the CIT should consider in the first instance whether its grant of a universal injunction comports with the standards outlined by the Supreme Court in *CASA*." *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1340 (Fed. Cir. 2025) (en banc) (per curiam).

Plaintiffs point (Br. 54) to an argument in their motion that "the government cannot impose IEEPA tariffs on *anyone* without violating" *Learning Resources*, but that argument concerned whether new IEEPA tariffs could be "impose[d]," not the manner in which the already-collected duties could be refunded. Appx32. Plaintiffs' separate request concerning refunds (Appx33-36) was repeatedly limited to their *own* refunds. *See* Appx33 ("administrative orders necessary to ensure that Plaintiffs swiftly receive the refunds"); Appx35 ("relief … necessary to ensure that Plaintiffs promptly receive their refunds"); Appx35 ("relief necessary to guarantee Plaintiffs' refunds"). At no point did plaintiffs request relief for importers who had not sued.

Nor are plaintiffs helped by the heading in their CIT motion (Appx33) stating that the court "should grant permanent injunctive relief that enforces Defendants' stipulation that they would pay IEEPA tariff refunds." As

demonstrated throughout the text of that section, the heading referred to the government's stipulation that it would issue refunds to *plaintiffs* (which is exactly what the government has done and continues to do), not importers who have not sued. *See* Appx33 ("[T]he government stipulated that a stay of this Court's permanent injunction 'would not cognizably harm plaintiffs' because '… the government will issue refunds to plaintiffs[.]'"); Appx34 ("[T]he government has repeated its stipulation and clarified that it applies to *all* similarly situated plaintiffs."); Appx34 ("The government subsequently reiterated that this stipulation would apply to all 'current and future similarly situated plaintiffs.'"); Appx35 ("This Court should therefore issue injunctive relief that vindicates Defendants' stipulation by requiring Defendants to issue the administrative orders necessary to ensure that Plaintiffs promptly receive their refunds and the appropriate interest."). The government has never stipulated to entry of a universal injunction.

And plaintiffs' claim that their "complaint sought universal *injunctive and* monetary relief for 'any tariffs collected,'" Br. 55 (emphasis added), is not just wrong but egregiously so. The complaint seeks injunctive and declaratory relief against the enforcement of the challenged tariffs—but what it says on the subject of remedies for tariffs unlawfully collected is that the

CIT should "[a]ward *Plaintiffs damages* in the amount of any tariffs collected by Defendants pursuant to the challenged orders." Complaint at 24, *V.O.S. Selections, Inc. v. Trump*, No. 25-66 (Ct. Int'l Trade Apr. 14, 2025), Dkt. 2 (emphasis added). The complaint could not have been clearer that it was seeking importer-specific monetary relief, not an injunction requiring the government to repay *all* invalidated tariffs to *all* importers.

Plaintiffs also err in suggesting that this Court's instruction for the CIT to "consider in the first instance whether its grant of a universal injunction comports with the standards outlined by the Supreme Court in *CASA*," *V.O.S. Selections*, 149 F.4th at 1340, allowed the CIT to enter the universal injunctions sua sponte. As an initial matter, this Court was not remanding for the CIT to consider a *refund-related* injunction at all. It was remanding for the CIT to consider whether its injunction against the *enforcement* of the challenged tariffs could properly be universal. *Id.* In any event, an instruction for a court to consider the propriety of universal relief hardly allows the court to grant that extraordinary form of relief *if no party is seeking it*—much less to do so sua sponte, without any sort of adversarial presentation. "[C]ourts are 'essentially passive instruments of government,'" which must "rely on the parties to 'frame the issues for decision' and decide 'only the

questions presented.'" *Margolin v. National Ass'n of Immigr. Judges*, 608 U.S. 339, 342 (2026) (per curiam) (quoting *Sineneng-Smith*, 590 U.S. at 375-376). The CIT failed to adhere to its role here.

Finally, it is difficult to understand plaintiffs' objection that "the government spent months participating in settlement conferences and submitting status reports in connection with the CIT's injunction" (Br. 56) before appealing it. The government timely appealed the CIT's orders here and in *Euro-Notions*, and it did not appeal in *Atmus* only because *Atmus* filed its notice of voluntary dismissal, thereby dissolving the injunction, four weeks before an appeal was due. *See, e.g.*, Fed. R. App. P. 4(a)(1)(B) (60 days); Appx44 (June 2 notices of appeal); *Euro-Notions Fla., Inc. v. CBP*, 2026 WL 2199710 (Ct. Int'l Trade Apr. 7, 2026); *Atmus Filtration, Inc. v. United States*, 2026 WL 616128 (Ct. Int'l Trade Mar. 4, 2026); Gov't Br. 15 (Atmus noticed dismissal on April 6). The government's good-faith participation in proceedings concerning the refunds of the challenged tariffs is hardly an indication that the government acceded to this particular means of effectuating the refunds.

### C. The CIT Failed To Apply The Equitable Factors For Injunctive Relief

Finally, the CIT separately erred by granting injunctive relief without applying the equitable factors. Appx1-3. Plaintiffs do not contest that courts must consider the equitable factors before granting injunctive relief. *See Winter v. NRDC*, 555 U.S. 7, 20 (2008). They instead urge (Br. 57-58) that the Court *did* apply the equitable factors, relying on a single sentence from the CIT's discussion of why *CASA* does not prevent it from entering a universal injunction. This argument cannot be squared with the text of the order.

The sentence in question states: "To find otherwise would be to thwart the efficient administration of justice and to deny those importers who have filed suit the efficient resolution of their claims, and to deny entirely importers who have not filed suit the benefit of the *Learning Resources* decision." Appx3. That sentence did not purport to apply the equitable factors. It simply stated the bottom-line conclusion that the CIT believed a universal injunction instead of a party-specific injunction was appropriate. It was the final sentence in a three-sentence paragraph that began: "Finally, the Chief Judge has indicated that I am the only judge who will hear cases pertaining to the refund of IEEPA duties. So there is no danger that another Judge, even

one in this Court, will reach any contrary conclusions." Appx3. The paragraph is entirely focused on the CIT's efficiency concerns, which are not sufficient to justify a universal injunction. *See CASA*, 606 U.S. at 856 ("policy pros and cons are beside the point"). It does not state that plaintiffs would suffer irreparable harm without injunctive relief or that the balance of equities and public interest weigh in favor of injunctive relief. The CIT simply did not apply the equitable factors.

Plaintiffs also fail to explain how the CIT could have issued this injunction if it *had* considered the equitable factors. As an initial matter, this Court cannot affirm an injunction on grounds not embraced by the lower court. *See, e.g.*, *Davilla*, 913 F.3d at 974; *Sherley*, 644 F.3d at 397-398; *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 13 (1st Cir. 2002). And in any event, plaintiffs' argument is unpersuasive on its own terms.

First, plaintiffs fail to explain how the injunction was necessary to prevent irreparable harm *to them*. Their argument is predicated almost entirely on the notion that the injunction was an efficient means of effectuating refunds to *other* importers—*i.e.*, those who have not sought refunds through the CAPE system, or who have not sought and obtained importer-specific orders to reliquidate finally liquidated entries by filing separate actions in

the CIT. But an injunction, at most, must be no broader than necessary to provide complete relief to the *plaintiffs* who have established standing. *CASA*, 606 U.S. at 861 (asking whether the injunction is "necessary to provide complete relief to each plaintiff with standing to sue"); *id.* at 854 ("Complete relief is not a guarantee—it is the maximum a court can provide."). And to the extent plaintiffs suggest elsewhere in their brief that they are personally harmed by other importers not receiving refunds, they lack standing to assert such injuries for the reasons discussed above.

Second, plaintiffs' discussion of the public interest and the balance of harms rests, essentially entirely, on plaintiffs' misapprehension that 19 U.S.C. § 1520(a)(1) authorizes the CBP to refund tariffs on finally liquidated entries without a court order. But this statutory argument, which has never been adopted by the CIT, is wrong. Section 1520(a)(1) provides that the Secretary of the Treasury is authorized to refund duties "[w]henever it is ascertained *on liquidation or reliquidation* of an entry or reconciliation that more money has been deposited or paid as duties than was required by law to be so deposited or paid." 19 U.S.C. § 1520(a)(1) (emphasis added). But the entries in question are past the date of "liquidation," *id.*—the point at which CBP concludes the process of determining the duty liability and

finalizes the entry, 19 C.F.R. § 159.1; *see* 19 U.S.C. § 1500; Gov't Br. 7-9. And Congress has given CBP only limited authority to reliquidate entries: either within 90 days of when an entry was first liquidated, 19 U.S.C. § 1501,[1] or if a protest is properly filed within the statutory time limits and approved by CBP, *see id.* §§ 1514, 1515. CBP has no statutory authority to reliquidate finally liquidated entries of its own accord.

This Court's decision in *Shinyei Corp. of America v. United States*, 355 F.3d 1297 (Fed. Cir. 2004), does not support plaintiffs' understanding of § 1520. According to plaintiffs, *Shinyei* supports the view that CBP can reliquidate finally liquidated entries without a court order. Br. 34-35. But the plaintiffs in *Shinyei* were seeking a court order, 355 F.3d at 1303, and *Shinyei* merely held that 19 U.S.C. § 1514(a) did not bar that requested relief, *id.* at 1312. Nothing in *Shinyei* suggests that seeking a court order was

---

[1] Plaintiffs mistakenly assert (Br. 25) that "the government believes it is appropriate to shorten the statutory voluntary reliquidation period by 10 days to account for CAPE processing time." The government has never asserted that. The 80-day limitation merely concerned the availability of Phase 1 of the CAPE system "to ensure that processing is complete and the entries are reliquidated by the 90th day to meet the agency's legal timeframe for voluntary reliquidation pursuant to 19 U.S.C. § 1501." Declaration of Brandon Lord at 7-8, *Atmus Filtration, Inc. v. United States*, No. 26-1259 (Ct. Int'l Trade Mar. 31, 2026), Dkt. 51.

unnecessary or that the statute requires CBP to independently reliquidate final entries absent a court order.

At bottom, plaintiffs' argument is that it cannot be "more equitable or better for the public interest for the CIT to force" importers to "fil[e] their own complaints and obtain[] their own orders" in order to obtain refunds of IEEPA tariffs on finally liquidated entries. Br. 59-60. But that argument—which conflates the equities with plaintiffs' (erroneous) view of the merits—also ignores the availability of more limited or cautious forms of relief, even assuming plaintiffs are correct that the CIT has jurisdiction and equitable authority to grant universal relief and even assuming any plaintiff had asked for such relief. The CIT could, for example, have required CBP to issue refunds in stages rather than issuing an injunction that, if its actual terms were ever enforced, would seemingly require CBP to repay everyone, everywhere, all at once. The fact that the CIT stayed enforcement of the injunction does not make its sweeping terms any more equitably appropriate.

## CONCLUSION

The universal injunctions entered by the CIT should be vacated.

Respectfully submitted,


BRETT A. SHUMATE
*Assistant Attorney General*

BRAD HINSHELWOOD
DANIEL WINIK

*/s/ Sophia Shams*
SOPHIA SHAMS
DOUGLAS C. DREIER
*Attorneys, Appellate Staff*
*Civil Division, Room 7213*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-2000*
*sophia.shams@usdoj.gov*


NOVEMBER 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Circuit Rule 32(b)(1) because it contains 4,953 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Book Antiqua, a proportionally spaced typeface.

*/s/ Sophia Shams*
Sophia Shams